MERLE COFFE v. STATE.

No. A-8989.    April 10, 1936.
(56 Pac. [2d] 1194.)

122

Vernon S. Roberts, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case filed in the district court of Ottawa county, December 31, 1934, charged that in said county on or about the 4th day of November, 1934, the defendant, Merle Coffe, did commit the crime of rape. The charging words are:

"Said defendant then and there being did then and there wilfully, unlawfully, forcibly and feloniously make an assault upon the person of Lucille Barbee, and did ravish and carnally know the said Lucille Barbee, a female person of the age of 19 years and not the wife of said defendant, and did overcome the resistance of the said Lucille Barbee by means of force contrary to," etc.

Upon the trial the jury returned their verdict finding "the defendant, Merle Coffe, guilty of rape in the first degree as charged in the information, but we are unable to agree upon the punishment."

Motion for new trial was duly filed, presented, and overruled. March 27, 1935, the court pronounced judg-ment and sentenced the defendant to imprisonment in the state penitentiary for a term of 25 years.

The evidence shows that the prosecutrix, age 19 years, was born and reared in Afton, and was living with her parents; that she had known the defendant two or three years and had dates with him several times; that on Saturday night, November 3, 1934, she went to a dance at the home of Lee Ward, in the town of Afton.

She testified she went to the party with a young lady friend. Saw the defendant there and stayed until a little after 12, leaving there in company with the defendant, walking in the direction of her home. That, after going a few blocks, the defendant stopped, grabbed her in his arms, and tried to kiss her; she said, "It is getting late, my folks will be worried about me"; he said, "Well, you know I can take it away from you"; and she said, "You ought to, you are big enough," and began trying to jerk loose. She said, "You had better leave me alone." He said, "Don't you holler, if you do I will knock you down." That Amos Wynn, a neighbor boy who had been at the party, came along and she asked him if he would take her home, and he said, "I am afraid it will make Coffe mad." That she grabbed hold of Amos and tried to hold on to him. The defendant said he was not going to do anything to her, and that he would take her home safe, and told Amos to go on. That she started screaming and crying, and the defendant hit her in the mouth and knocked her glasses off, then he pulled her over on a vacant lot and threw her down and put his hands to her mouth. Then she tried to get up, and finally he said, "Get up; I am going to take you home." That she picked

up her hat and purse and they started on. That when they got within half a block of her home she lost one of her slippers. After finding her slipper, she put it on and he jerked her over next to a signboard, knocked her down with his fist, then got down on her, and struck her four or five blows with his fist. That she succeeded in getting up and he threw her down again, and by force and violence had .sexual intercourse with her. That he helped her up and gathered her things, but he could not find her glasses. That she went home and told her mother that Merle Coffe had raped her.

Dr. C. J. Cunningham testified that he was called by Mr. Barbee to attend his daughter about 4 o'clock in the morning, and his examination disclosed bruises and scratches over the side of the face and on the lips and chin, and a small cut on the back of the head, and that he treated the abrasions, would say that the number was ten; was called ten days later and made a vaginal examination; could not say whether or not she had sexual intercourse within the last two weeks.

Amos Wynn testified that on his way home from the dance at the Ward home that night he overtook the defendant and Lucille, and she asked him to let her walk home with him; that Merle had promised to treat her like a sister and that was as far as he would go. The defendant said, "Go on, Amos, I will take her home safe," and repeated this two or three times.

As a witness in his own behalf the defendant testified:

"I was arrested on the 4th day of November, 1934; have been confined in the county jail since that time. My age is 24 years. I had been living with my brother at Picher, working in the mines. I left Picher that afternoon and went to Afton to see my folks, and before

going home I went to the dance that night. There were 25 or 30 persons there. Someone said, 'There is plenty of whisky here, it is election time.' I met Lucille Barbee there. I had dated her steady for two or three months, the last time 4th of July last. The third time I dated her we had intercourse. On three different occasions after that I had sexual intercourse with her. I left the dance with her around 12:30. I was pretty drunk. On the way she said she was figuring on getting married. I said something about having intercourse and she said she wouldn't. Amos Wynn passed us. I spoke to him and Lucille spoke to him. We walked slow, stopped several times, and I took her home, then I went home. It was 2:20. Mother and father got up and we talked a while. I did not have sexual intercourse with her that night."

Mrs. Laura Coffe, mother of the defendant, testified that he came home Sunday morning about 2:30 and acted like he had been drunk. That on the following Tuesday she, with Mrs. Nona Coffe, went to the Barbee home. While there, Mrs. Barbee, in the presence of her daughter Lucille and others, stated that Lucille came in that night and merely said they need not be scared, she just got beat up. That she asked Lucille, "Did Merle injure you any other way besides your face being scratched?" and she said, "No."

Mrs. Nona Coffe testified to the same statements.

Jewell Long testified that he lived at Afton practically all his life, and was walking on the street. Lucille and Pauline Nelson walked up. Lucille bantered him to go to the dance, and they went there together. It was about 8:30. The defendant was there and was drinking. When ready to go home Lucille said that Merle was going to take her home, and they left about 20 minutes before he did.

In rebuttal the prosecutrix, recalled, testified that the defendant never had sexual intercourse with her at any other time.

One of the grounds for new trial and assigned as error is that the court erred in making prejudicial remarks to the jury when they returned for other forms of verdicts.

It appears from the record that, after the jury had retired for deliberation and had remained out for some time without reaching a verdict, they were called to the courtroom and the following proceedings were had:

"The county attorney presented the closing argument on behalf of the state to the jury, and thereupon the jury retired to the jury room, under the direction of the court, to deliberate upon their verdict, and said jury being in charge of the sworn bailiff of the court.

"And thereafter on said day, to wit, at 12 o'clock noon, the jury was brought into the courtroom by the bailiff of the court, and the defendant not being present, and the defendant's attorney of record, Vernon S. Roberts, being in the courtroom, the following was had and done, to wit:

"The Court: Have you gentlemen agreed upon a verdict? Foreman: We have not. Court: What seems to be the trouble? Foreman: If we had the right kind of a verdict we could agree. The Court: Under the instructions of the court and under the view the court takes of the law applicable to this case, this defendant is guilty of rape in the first degree or he is not guilty.

"For rape in the first degree the punishment may be death; may be life imprisonment; the minimum is 15 years in the penitentiary.

"The law under which this man is being tried provides for those punishments and the section says, in meaning, that if the jury finds a defendant guilty and cannot agree upon the punishment but does agree upon a verdict

of guilty, then it becomes the duty of the court to fix the punishment.

"In trying many cases I have purposely refrained in many cases from handing the jury a verdict finding the defendant guilty and stating they are unable to agree upon the punishment for two reasons:

"It would have a tendency to relieve me of responsibility; and all defendants, without exception, and all judges, without exception, so far as I know, prefer and believe that it is a right that when a jury find a defendant guilty that the jury ought to fix the punishment if they can agree.

"The jury may return a verdict saying they find the defendant guilty but are unable to agree upon the punishment.

"I don't know whether that is what you have in mind or not, but I have submitted to you a verdict finding the defendant guilty and assessing the punishment at death; one fixing the punishment at life imprisonment in the state penitentiary; one fixing the punishment at imprisonment in the state penitentiary for a term of —— years; and one a verdict of not guilty.

"I am therefore submitting to you a verdict stating that you find the defendant guilty of rape in the first degree, and that you are unable to agree upon the punishment.

"It may be you are trying to find this man guilty of something else. He is guilty of rape in the first degree or nothing, under the law and the instructions.

"I am handing to you this additional verdict, which omitting the caption reads as follows:

" 'We, the jury, impaneled and sworn in the above entitled cause, do upon our oaths find the defendant Merle Coffe guilty of rape in the first degree as charged in the information. And we are unable to agree upon the punishment.'

"You, Gentlemen, may, in company with the bailiff, go to lunch and I wish you would get back at one o'clock or sooner, if you can, and resume your deliberations. You will have this additional verdict.

"I don't want to and wouldn't if I could, and couldn't if I would, undertake to unduly persuade you or coerce you. I will say this: I need you and if you can reach a verdict quickly it will be very agreeable to the court. Of course I am unwilling to admit that twelve intelligent citizens of Ottawa county cannot decide this case. I am not going to admit that. Take this verdict, Mr. Bailiff, and hand it over to the foreman of the jury.

"You gentlemen resume your deliberations, as soon after your lunch hour as you can. Mr. Bailiff, just bring them back directly to the jury room when they get their lunch. You gentlemen may retire.

"By Mr. Roberts: Comes now the defendant and objects to the remarks of the court for the reason that same are prejudicial to the rights of this defendant, being made without knowledge of what the jury had in mind; or whether the jury believed that the defendant might be guilty of a lesser offense.

"The Court: Overruled. You may have an exception."

It is contended by counsel for appellant that these remarks of the court amount to oral instructions and ought not to have been made except in writing under the statute which provides:

"When the arguments are concluded, if the court be of the opinion that the jury might be misled by the arguments of counsel, he may to prevent the same further instruct the jury. All instructions given shall be in writing unless waived by both parties, and shall be filed and become a part of the record in the case." Section 3057, subd. 6, St. 1931.

Aside from the question as to whether the remarks of the court ought to have been in writing, it is contended

that they were of such a nature as to prejudice the jury, and that the court assumed that the jury was agreed as to the guilt of the defendant, but could not agree on the punishment.

The exception was taken to the remarks of the court as being prejudicial to the rights of the defendant, but no exception was taken to them on the ground of the defendant not being present, and the absence of the defendant was not presented as a ground for a new trial; consequently the question of the absence of the defendant was not presented to the trial court, and therefore is not properly before this court for determination. Kennamer v. State, 59 Okla. Cr. 146, 57 Pac. (2d) 646.

Jurors are easily influenced by the remarks of a trial judge, and the greatest care should be observed that nothing is said that can by any possibility be construed as an expression of the trial judge's views respecting the merits of a criminal case. Courts cannot be too circumspect in this regard. Pilgrim v. State, 3 Okla. Cr. 49, 55, 104 Pac. 383; Reed v. State, 5 Okla. Cr. 365, 114 Pac. 1114; Harrison v. State, 11 Okla. Cr. 14, 141 Pac. 236; Shepherd v. State, 17 Okla. Cr. 630, 192 Pac. 238; Cosby v. State, 30 Okla. Cr. 294, 236 Pac. 51; Viadock v. State, 30 Okla. Cr. 374, 236 Pac. 56.

Upon the record before us we are of opinion that the remarks of the court were prejudicial to the substantial rights of the defendant.

In view of another trial, we are of opinion that under the evidence in this case the court should have submitted the included offense of assault with intent to commit rape as defined by section 1869 of the Penal Code (St. 1931).

The other errors relied upon are not such as will likely occur upon a retrial of the case.

The judgment of the district court of Ottawa county is reversed, and the cause remanded for further proceedings in accordance with this opinion.

The warden of the penitentiary will surrender the defendant, Merle Coffe, to the sheriff of Ottawa county to be returned to said county and held in custody until he shall be discharged or as otherwise ordered according to law.

EDWARDS, P. J., and DAVENPORT, J., concur.