## MOLLIE PARIS v. STATE.

No. A-9496.  May 26, 1939.

(90 P. 2d 1078.)

238

H. M. Shirley, of Coalgate, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, P. J. The information charged that in Coal county, on or about the 19th day of August, 1937, Mollie Paris did have in her possession about 12 pints of tax-paid whisky, with the unlawful intent to sell the same.

On the trial the jury returned a verdict of guilty and fixed her punishment at a fine of $50 and confinement in the county jail for 30 days.

Various errors are assigned, but the only question we deem necessary to discuss is whether the evidence adduced on the trial is legally sufficient to support the verdict and judgment of conviction.

Walter Clark, sheriff, testified that he went to the home of the defendant, accompanied by a deputy, and found 12 pints of bottled in bond whisky; he produced and identified the same.

C. C. West, deputy sheriff, testified that they found this whisky in John Paris' residence, where the defendant lived with her husband and children, in the town of Cotton-wood, Coal county.

On the part of the defendant, John Paris, testified that his age is 63 years, lived at Cottonwood with his wife and eleven children, had lived in Oklahoma for 35 years; that about eight years ago he was afflicted with tuberculosis

and was committed to the tubercular sanitarium at Talihina, and was there about four years; that the liquor the officers seized belonged to him and was for his own use; that on the advice of his physician, Dr. Sadler, he used the whisky by taking a few toddies every day; that he was married to Mollie Paris, the defendant, 28 years ago, and they had eleven children living with them.

As a witness in her own behalf, Mollie Paris testified that her age was 45 years; that she has now living eleven children, all present in the courtroom at this time; that she knew that her husband had the whisky there, and used it for medicine; that she never did sell whisky to any person at any time.

One of the grounds of the motion for a new trial, and here assigned as error, is that the court erred in refusing to give instructions on the presumption of law that she was under coverture, as provided by statute. Penal Code, sec. 1802, 21 Okla. St. Ann. § 157. And requiring the jury to find that she was acting independently of her husband's control in order to find her guilty.

The instructions requested were refused by the court and the instructions given by the court did not submit the question of whether she was a free agent or acting under the direction of her husband.

It is contended that the inference of duress arises under the provisions of sections 1800 and 1802, Penal Code, 21 Okla. St. Ann. §§ 155, 157, and that there is no evidence to rebut the inferences.

In the case of Sentell v. State, 61 Okla. Cr. 229, 230, 67 P. 2d 466, 468, it is said:

"The general rule that, as to criminal acts committed in the presence of her husband, a married woman is presumed to have acted under coercion, is, of course, where recognized, applied to cases of liquor-law violation. But in proving the unlawful manufacture, or the possession of liquor, or the maintenance of a liquor nuisance, dis-

tinctive questions are presented in reference to inferences arising from the wife's presence, her failure to object or to take other action, or her assistance rendered in avoiding detection of the crime. In such cases, the rule generally recognized, even where the presumption of coercion does not obtain, is that the husband as the head of the household is presumptively responsible for conditions there, and that the wife cannot be held accountable therefor in the absence of some evidence of guilt in addition to the fact of her mere presence in the place of the offense. See 71 A.L.R., annotation, p. 1127. * * *

"It may be said that marriage does not take from the wife her general capacity to commit crime, but it casts upon her the duty of obedience to her husband, and, in the absence of proof to the contrary, the law indulges a presumption that, where a crime, with some exceptions, was committed by a married woman, conjointly with or in the presence of her husband, prima facie she was not criminally liable, as it is presumed that she acted in obedience to his commands and under his coercion.

"In some jurisdictions the presumption of coercion has been abolished by statute, and married women are made fully liable for their criminal acts, see State v. Renslow, 211 Iowa, 642, 230 N.W. 316, 71 A.L.R. 1111, while in other jurisdictions they have been expressly declared incapable of committing crimes, except felonies, when acting under the threats, command, or coercion of their husbands.

"In 13 R.C.L. p. 1238, § 275, it is said: 'According to the better view, where a married woman commits a criminal act in the presence of or jointly with her husband, the presumption of coercion is prima facie only, and she may be held criminally liable if it is shown that she acted of her free will and volition. This presumption is very slight and may be rebutted by slight circumstances. Still practical weight must be given to this presumption, and in the absence of any evidence to rebut it, her conviction cannot be sustained.' " Neff v. State, 29 Okla. Cr. 2, 231 P. 898; Sanders v. State, 48 Okla. Cr. 65, 289 P. 798; Zammer v. State, 51 Okla. Cr. 125, 300 P. 325; Davis v. State, 53 Okla. Cr. 85, 7 P. 2d 911.

In the case at bar a prima facie case of coercion was established when it was shown that the defendant was a married woman, occupying the premises with her husband as their home, and that the criminal act, if any, was in the presence of her husband. There was no evidence offered to show that she acted upon her own initiative, or that she acted freely and of her own volition, and there was no evidence offered to rebut the presumption that she acted under coercion of her husband.

The Code of Criminal Procedure, sec. 3090, 22 Okla. St. Ann. § 850, provides that if the evidence introduced by the state fails to incriminate the defendant, or as a matter of law is insufficient to show that the defendant is guilty of the offense charged, it is not only the right but the duty of the trial court to advise the jury to return a verdict of acquittal.

From the record before us, we are clearly of the opinion that for the reasons stated the evidence wholly fails to show that this defendant was guilty of the offense charged, and for this reason the trial court should have advised the jury to return a verdict of acquittal, because the evidence is insufficient to warrant a conviction.

Because the verdict is contrary to law and the evidence entirely insufficient to sustain a conviction, the judgment appealed from is reversed and the cause remanded, with direction to dismiss.

BAREFOOT and DAVENPORT, JJ., concur.