## KELSO et ux. v. STATE.

No. A-11729. March 4, 1953.

Rehearing Denied March 25, 1953.

(255 P. 2d 284.)

Moore & Fitzgerald, Stillwater, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J.  Joe and Josie Kelso, husband and wife, were jointly charged by an information filed in the district court of Payne county with having feloniously committed the crime of unlawful possession of intoxicating liquor, the information further alleging that each of the said defendants had prior thereto sustained convictions for violations of the prohibitory laws, the details of which were fully set forth in the information; the defendants were tried, found guilty, but the punishment was left to the court.  Thereafter, the court sentenced the defendant Joe Kelso to serve 2½ years in the penitentiary and pay a fine of $1,000 and Josie Kelso was sentenced to serve 18 months in the penitentiary and pay a fine of $500.

The following assignments of error were presented in the brief of the defendants:

1.  The evidence is insufficient to support the judgment.

2.  The county attorney was guilty of improper conduct throughout the trial.

3.  The court erred in the admission in evidence of certain photographs, which were taken 10 days after the alleged commission of the crime.

The evidence of the state consisted of testimony by several officers who participated in a raid on the premises where the intoxciating liquor was found. The testimony showed that the defendants owned a house in the Negro section of the city of Cushing, which had a sign on the outside designating it as the "Savoy Sandwich Shop". The testimony of the officers, however, clearly established that the establishment was not a sandwich shop, as there were no plates, food or any other items which ordinarily would be found in a sandwich shop. It consisted of almost a bare room. A few feet to the rear of this alleged sandwich shop was a small house which was occupied as a home by the defendants. About 3 feet north of the alleged sandwich shop was an empty house in which the intoxicating liquor, consisting of approximately 180 pints of tax-paid whiskey and gin and 10 gallons of nontax-paid corn whiskey were found.

The testimony of the officers showed that when they entered the sandwich shop they found the two defendants and two other parties in the building. One of the parties, by the name of Fred Helm, ran from the building and broke a pint of whiskey on a rock outside of the building. No intoxicating liquor was found in the sandwich shop or in the small house to the rear of the sandwich shop. From the rear door of the sandwich shop a clearly defined path led to the door of the adjoining vacant building where the liquor was found. This house was locked but officers forced the door open and found the intoxicating liquor in question. The evidence further showed that this vacant building was surrounded by high weeds and on one side was cut off from entrance by a board fence through which it was impossible to see. The "sandwich shop" and the vacant house were about 3 feet apart but the board fence separating the two houses was nailed to each house. An old Negro lady had died in the house about two years before the date of the search and it had been unoccupied since her death.

On the north side of the vacant building was a wide ditch through which waste from an oil refinery constantly ran and there was no place on that side of the building which was being used as a passageway. All of the evidence showed that there had been a path worn between the sandwich shop and the place where the intoxicating liquor was cached. Lee Stiles, one of the officers who remained with the two defendants while the other officers were searching the other building, testified that when the whiskey was found under the floor Joe Kelso turned to his wife Josie and said, "They have found them". The evidence was entirely circumstantial, but it was sufficient, in the absence of any explanation or proof offered on behalf of the defendants, to sustain the conviction as to Joe Kelso. A different situation exists as to Josie Kelso. She was the wife of Joe Kelso and, so far the record discloses, did not utter a word during the entire time the search was being made. The state did introduce proof of her prior criminal record, showing convictions for violations of the prohibitory laws, but this proof only affected the question as to the amount of punishment that could be inflicted if her guilt was established . We are convinced that under the Oklahoma law the presumption of coercion where a wife allegedly commits a crime in the pesence of her husband applies.

In the case of Sentell v. State, 61 Okla. Cr. 229, 67 P. 2d 466, it was held:

"On the trial of a wife jointly charged with her husband with unlawful possession of a still, where the evidence shows that the same was found on premises occupied by them as their home, it must be presumed that the wife acts under her husband's direction and coercion, and she is entitled to an acquittal of any charge brought against her for the commission of such act, unless such presumption is rebutted.

"Marriage does not take from the wife her general capacity to commit crime, but casts on her the duty of obedience to her husband, and, except as to crimes

named in Penal Code, § 1802 (21 Okla. St. Ann. § 157), in the absence of proof to the contrary, the law indulges a presumption that when she committed the act charged in the presence and with the assent of her husband, it is the result of restraint or coercion.

"The husband is the head of the family. He may choose any reasonable place or mode of living and the wife must conform thereto. Section 1652 (32 Okla. St. Ann. § 2).

"A subjection sufficient to excuse from punishment may be inferred, in favor of the wife, from the fact of coverture whenever she committed the act charged in the presence and with the assent of her husband, except where such act is a participation in the crimes named in Penal Code, § 1802 (21 Okla. St. Ann. § 157).

"Wife is not criminally liable for a misdemeanor committed in her husband's presence, in absence of showing that she acted on her own initiative.

\* \* \* \* \* \*

"In .prosecution of a married woman for unlawful possession of a still, the presumption that she is committing an offense in her husband's presence, if any, acted under his coercion, held not rebutted."

In the case of Paris v. State, 66 Okla. Cr. 236, 90 P. 2d 1078, 1079, this court held: . ·

"In prosecution of married woman for unlawful possession of intoxicating liquor, in her home, the presumption that she, in committing the offense in her husband's presence, acted under his coercion, held, not rebutted."

In the body of the opinion, it was stated:

"In the case at bar a prima facie case of coercion was established when it was shown that the defendant was a married woman, occupying the premises with her husband as their home, and that the criminal act, if any, was in the presence of her husband. There was no evidence offered to show that she acted upon her own initiative, or that she acted freely and of her own volition, and there was no evidence offered to rebut the presumption that she acted under coercion of her husband."

Even though the wife might have known of the intoxicating liquor, there must be some further proof of her participation in the possession of such liquor, since the law does not call upon her, in order to avoid being guilty of the offense, to abandon her home, separate from her husband, and dissolve the bonds of matrimony between them. We therefore hold that the evidence is wholly insufficient to convict the defendant Josie Kelso and the trial court erred in refusing to instruct the jury to return a verdict of not guilty as to her.

The second assignment of error is directed at certain evidence brought out on direct examination of Floyd Stroup, chief of police of the city of Cushing. This testimony was as follows:

"Q. What led you to search the building north of the Savoy cafe? A. Well, we had made several raids down there and noticed a path at one time leading from this Savoy cafe over to the building to the north which was vacant."

The county attorney also inquired as to a raid made 10 days subsequent to the raid involved in this prosecution, but an objection interposed by counsel for the defendant to such evidence was sustained by the court.

While ordinarily statements such as hereinabove quoted made by witnesses for the state would constitute reversible error as attacking the character of the accused when his character had not been placed in issue, there are two reasons why this does not constitute reversible error in the instant case. In the first

place, the question was asked and the answer was made without any objection being interposed. In the second place, and probably the reason no objection was interposed, it had been stipulated at the trial that each of the defendants had sustained convictions for the unlawful possession of intoxicating liquor at many other times, and with this stipulation in the record such testimony, of course, could not have prejudiced the jury.

The last assignment of error is directed at the admission in evidence of several photographs taken 10 days after the raid was made. These photographs showed the three buildings that were searched and the surroundings at the buildings as they existed on July 16, which was 10 days subsequent to the raid. The evidence was that these photographs correctly depicted the situation as it existed at the time of the raid with the exception that there were a few weeds commencing to grow in the pathway which were not there at the time of the raid. There was no effort made on behalf of the accused to show that there was any change in the surroundings.

In the case of Toms v. State, 95 Okla. Cr. 60, 239 P. 2d 812, it was held:

"When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places."

In Garrett v. State, 95 Okla. Cr. 44, 239 P. 2d 439, 440, this court held:

"Photographs, drawings, and maps, may be introduced in evidence as an aid to the jury for the purpose of explaining the locations and positions of objects which are material to the inquiry, but their admission in evidence rests largely in the discretion of the trial court, and, unless this discretion is abused, it will not be cause for reversal."

We held that the admissibility of these photographs in evidence was a matter within the sound discretion of the trial court and was clearly valuable as an aid to the jury in understanding the testimony of the officers. The pictures attached to the case-made were valuable to this court in considering the sufficiency of the evidence because they clearly portrayed the condition at the three buildings involved and an inspection of the photographs convinces a person that the building where the intoxicating liquor was found was isolated from all other parties except the persons in the adjoining building, which was the building owned and occupied by the defendants. As to the admissibility of such photographs, see, also, Jackson v. State, 67 Okla. Cr. 422, 94 P. 2d 851; Hudman v. State, 89 Okla. Cr. 160, 205 P. 2d 1175; Langley v. State, 90 Okla. Cr. 310, 213 P. 2d 886.

The trial court gave the defendant, Joe Kelso, an unusually heavy sentence for a liquor conviction, but the records show that he had served a five-year sentence in the State Penitentiary on a narcotics charge and later served a term in the United States Penitentiary at Fort Leavenworth, Kansas, for selling narcotics, and in addition had been convicted on at least two occasions for the crime of unlawful possession of whiskey. Under such a record we cannot conclude that the sentence assessed the defendant is so excessive as to shock the conscience of the court and show that it was actuated by partiality, passion or prejudice.

The judgment and sentence of the district court of Payne county is affirmed as to the defendant Joe Kelso and it is reversed as to the defendant Josie Kelso and she is ordered discharged.

POWELL, P. J., and BRETT, J., concur.