## TRAPP v. STATE.

No. A-11947.

Criminal Court of Appeals of Oklahoma.

March 31, 1954.

914

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiff in error has appealed from a conviction in the court of common pleas of Tulsa County for the unlawful possession of intoxicating liquor, where the court sentenced her to serve a term of thirty days in the county jail, and pay a fine of $50.

A trial by jury was waived.

The evidence on motion to suppress disclosed that Roy Rains and Fred Stapp, deputy sheriffs of Tulsa County, obtained a search warrant for defendant's home located at 124 North Nogales Avenue, Tulsa. On arrival the officers found Mrs. Trapp and one of her neighbors, Mrs. Cecil Boone, the owner and lessor of the residence occupied by defendant, sitting in the living room. A man by the name of Bink Thompson, shown on motion to suppress to have been a bootlegger, was also sitting in the living room. The officers found a quantity of liquor in a secret compartment under the kitchen sink, where there was a trap door going into the wall. This door was so well concealed that it required the officers much time in locating it. There were 16 pints and 9 one-half pints of tax-paid whiskey discovered. The two officers were the only witnesses that testified. The defendant did not testify and introduced no evidence.

Witness Rains testified that Mrs. Trapp was a married woman and that the place searched was a residence. Deputy Stapp testified that the described property was a private residence and was not equipped as a commercial place. He also testified:

"Q. Do you know by what right Mrs. Jack Trapp occupied this house at the time? A. Yes, sir.

"Q. What was that? A. They rented it as their home.

"Q. From whom? A. From the Boones, Mrs. Cecil Boone."

Elmore A. Page, Tulsa, for plaintiff in error.

Mr. Rains was asked by the defense attorney:

"What was said, do you know? A. I told her, I said, 'You have a very good whiskey plant; this is an order, permit that we seize that, the cache.' She said: 'It isn't any good now.'"

The evidence further disclosed that there were empty whiskey bottles on the back porch and outside.

At the close of the evidence on motion to suppress, the motion was by the court overruled. Thereupon it was stipulated that the evidence just heard might be considered as the evidence on trial, and thereupon counsel for defendant interposed a demurrer, and the case was continued until the next day, April 14, 1953. It was asserted that the evidence was insufficient in that it failed to establish or show beyond a reasonable doubt that the defendant charged was the actual owner and in possession of the liquor found; that there existed the inference of duress under the provisions of Tit. 21 O.S.1951 §§ 155, 157. The court overruled the demurrer and continued the case until April 18, for passing sentence, when judgment was entered as heretofore recited.

The sole question for determination is whether the court erred in overruling the demurrer.

It is now urged by counsel that in that the evidence disclosed that the defendant was a married woman and that the property searched had been rented to the defendant and her husband by the Boones, that the inference of duress obtained, Tit. 21 O.S.1951 §§ 155, 157, and that it was therefore incumbent on the State to have shown beyond a reasonable doubt that the defendant charged was the actual owner and in possession of the liquor found. Counsel cites the cases of Paris v. State, 66 Okl.Cr. 236, 90 P.2d 1078, and Lynch v. State, 68 Okl.Cr. 303, 98 P.2d 625 as decisive of the issue.

In the Paris case, this court held:

"In prosecution of married woman for unlawful possession of intoxicating liquor, in her home, the presumption that she, in committing the offense in her husband's presence, acted under his coercion, *held*, not rebutted."

In the body of the opinion it was stated:

"In the case at bar a prima facie case of coercion was established when it was shown that the defendant was a married woman, occupying the premises with her husband as their home, and that the criminal act, if any, was *in the presence of her husband*. There was no evidence offered to show that she acted upon her own initiative, or that she acted freely and of her own volition, and there was no evidence offered to rebut the presumption that she acted under coercion of her husband." [Italics now supplied.]

In Lynch v. State, supra, on appeal it was held that the search warrant involved was fatally defective. This determined the case. Mrs. Sam Lynch, the defendant, had been jointly charged with her husband with the unlawful possession of intoxicating liquor, but had been tried separately. The evidence had shown that the husband and wife were living together with their eleven children and that the husband was present when the officers made the search of the home and obtained the liquor.

The only value of the Lynch case, so far as it may aid in the solution of the present case, arises by way of dicta contained in the opinion, and involving a quotation from Paris v. State, supra, and theretofore found in the case of Sentell v. State, 61 Okl.Cr. 229, 67 P.2d 466, 468. This quotation will presently be considered, but first we would summarize the facts developed in the Sentell case and the court's interpretation thereof.

It appears that both Ike Sentell and Zetta Sentell had been jointly charged with the unlawful possession of a still. The wife was tried separately from her husband and found guilty. The evidence had developed that certain officers had come to defendant's farm home, found her ill in bed, had left with her a copy of a search warrant and thereafter found a whiskey still in operation in a shed about 100 yards from the home; a keg of whiskey was found and also some mash. The defendant testified that she and Ike Sentell, her husband lived together on the premises where the still was found; that her home was provided for her by her husband and she occupied the same at his

discretion; that she had never been to the shed in which the still was found and her only information of said still was hearsay; that she had no interest or part in its operation; that there never was any whiskey brought into the house; that her husband left the house going to the shed about thirty minutes before the officers arrived.

In the body of the opinion, Doyle, J., speaking for the court said:

"In the instant case a prima facie case of coercion was established when it was shown that the defendant was a married woman, occupying the premises with her husband as their home, and that the criminal act, the unlawful use of the premises, *was in the presence of her husband,* [italics now supplied] and there was no evidence offered tending to show that she acted upon her own initiative or that she acted freely and of her own volition, and there was no evidence offered to rebut the presumption that she acted under the coercion of her husband.

"In this connection it appears that the defendant offered and requested the court to give an instruction on the presumption of law and requiring the jury to find that she was acting independently of her husband's control in order to find her guilty. This instruction was refused by the court, and the instructions given by the court did not submit the question of whether she was a free agent or acting under the direction of her husband."

Thus it developed that the court was of the opinion that although the husband was not actually present at the residence the moment the officers served the search warrant on the wife and made the search and found the whiskey on the farm some 100 yards away from the home, that the facts in the case justified the conclusion of the husband's presence and that therefore a prima facie case of coercion was established.

Doyle, J., speaking for the court in the body of the opinion made the following statement:

"The general rule that, as to criminal acts committed in the presence of her husband, a married woman is presumed to have acted under coercion, is, of course, where recognized, applied to cases of liquor-law violation. But in proving the unlawful manufacture, or the possession of liquor, or the maintenance of a liquor nuisance, distinctive questions are presented in reference to inferences arising from the wife's presence, her failure to object or to take other action, or her assistance rendered in avoiding detection of the crime. In such cases, the rule generally recognized, even where the presumption of coercion does not obtain, is that the husband as the head of the household is presumptively responsible for conditions there, and that the wife cannot be held accountable therefor *in the absence of some evidence of guilt in addition to the fact of her mere presence in the place of the offense.*" [Italics supplied.]

In support of the statement above there is cited 71 A.L.R., annotation at page 1127, and an examination of that authority discloses that the statement is actually a quotation from the editor of the note in A.L.R. and that by typographical error the quotation marks were omitted.

In examining the authorities forming the basis for the conclusion of the editor, set forth in said statement, we find cases so cited in 71 A.L.R., pages 1126–1129 that would tend to support the position of the defendant in the within case, and that render the meaning of the quotation confusing. See Croker v. State, 1923, 148 Tenn. 106, 251 S.W. 914[1]; Watson v. State, 1929, 114

1. "In Croker v. State, 1923, 148 Tenn. 103, 251 S.W. 914, in reference to a charge of keeping in stock whiskey intended for sale as a beverage, the evidence showing that when search of the premises was made the defendant attempted to prevent discovery of the liquor, it was held the state's evidence did not sustain the conviction, since the mere facts that the liquor was found on premises occupied by the defendant and husband and that she knew of it did not show her guilt of the particular offense charged. The court said: 'It is true this

Tex.Cr.R. 117, 24 S.W.2d 830[2]; and Wampler v. Corporation of Norton, 1922, 134 Va. 606, 113 S.E. 733[3].

It is evident, however that this court has never gone so far as the above courts in absolving the wife of unlawful possession of intoxicating liquor where the same was found in her possession and the husband was absent from home, based on the principle that the husband was the head of the family with right to control. Rather, in this jurisdiction the rule of presumptive coercion operated to protect the wife only in cases of her husband's presence at the time of the commission of the offense. And in spite of the application of the rule to the peculiar facts in the Sentell case, supra, as well as in Neff v. State, 29 Okl.Cr. 2, 231 P. 898, hereinafter to be referred to, a reading of the facts in the many cases from this court involving the general rule that when criminal acts are committed by a married woman in the presence of her husband, she is presumed to act under his coercion, *means a personal and physical presence.* See Harmon v. State, Okl.Cr., 260 P.2d 422; Kelso v. State, Okl.Cr., 255 P.2d 284; Ferguson v. State, 29 Okl.Cr. 238, 233 P. 497; Zammer v. State, 51 Okl. Cr. 125, 300 P. 325; Davis v. State, 53 Okl. Cr. 85, 7 P.2d 911; Stewart v. State, 71 Okl.Cr. 292, 111 P.2d 200; O'Donnell v. State, 73 Okl.Cr. 1, 117 P.2d 139.

By reason of the peculiar facts in the case of Neff v. State, supra, the court in applying the rule, found that the husband was present at the time of the search (when strictly speaking he was not present) and

court held in Morton v. State, 1918, 141 Tenn. 357, 209 S.W. 644, 4 A.L.R. 264, that, since the passage of the Married Women's Emancipation Act (Acts 1913, Chap. 26), the doctrine of supposed legal duress does not obtain with regard to crime committed by the wife in the presence of the husband. But we do not understand that that case or any other decision of this court, undertakes to declare that the husband is not the legal head of the family, with the right to control and manage the lands on which the husband and wife reside. * * * There is nothing in the state's evidence which shows that the defendant, rather than her husband, owned or stored the whiskey, or that she, and not her husband, was keeping it at their residence for the purpose of present sale. The leased premises were under the dominion and the control of the husband, and not of the wife.' "

2. "In Watson v. State, 1929, 114 Tex.Cr. R. 117, 24 S.W.2d 830, where, at the time of the raid upon the house occupied by the defendant and her husband, a large quantity of liquor was found, including an open bottle of liquor upon the table, no one except the defendant being found present, it was held such evidence was, alone, insufficient to sustain a conviction of possessing intoxicating liquor for purposes of sale; the court saying: 'Appellant was in her proper place in the home when the raid was made. She was doing nothing in connection with the beer when the officers appeared. She was merely present in the home presided over by her husband.' "

3. "In Wampler v. Corporation of Norton, 1922, 134 Va. 606, 113 S.E. 733, in reference to a statutory charge of keeping ardent spirits for sale, the statute providing that the mere finding of such ardent spirits in any room or building searched under the provisions of the act, 'shall be prima facie evidence of unlawful manufacturing, selling, keeping, and storing for sale * * * by the person or persons occupying such premises,' it was held that the mere finding of liquor on premises owned by the wife, whereon she and her husband resided, did not make out a case against her within the meaning of the statute, the court saying: 'The "occupant" referred to therein is "the person in charge". None of the many progressive charges made by the laws of this state in respect to marital rights have gone so far as to destroy the theoretical status of the husband as the responsible and authoritative head of the family and director of conditions in the home. * * * Where a married woman is charged with keeping ardent spirits for sale, there must be something more to establish her guilt than the mere finding of spirits on premises which she and her husband jointly made their home, no matter to whom the premises belong. If under the facts of this case Mrs. Wampler may be regarded as prima facie guilty of keeping whiskey for sale on the ground that she was an occupant of the premises where it was concealed, then the children are responsible aids, or any other member of the family, if any such there were, would be subject to the same presumption of guilt.' "

918

therefore that the finding of evidence of liquor on the premises was not chargeable to the wife, even though there was indication that the wife poured it out. Said the court:

"The record discloses that on June 3, 1923, the premises of Walter Neff, husband of plaintiff in error, were searched, and upon the evidence there obtained he was arrested, and subsequently convicted of illegal possession of intoxicating liquor. The day following the arrest and incarceration of Walter Neff, and in his absence, the premises were again searched. The officers said that as they approached the place they saw Mrs. Neff go hurriedly into the kitchen; that they followed her, and detected the odor of whiskey in a sink, and found a bucket there containing about a spoonful of corn whiskey; that there was a pipe leading from this sink to the rear of the lot, and that they detected the odor of whiskey at the end of this pipe.

"Notwithstanding the recent development in the emancipation of women, a wife is still presumed to be under duress of her husband, where a crime is committed by the husband in her presence. In this case the husband had just been carried away and incarcerated in jail. The whiskey the officers smelled may have belonged to him, and the wife may have had no intention of disposing of the liquor. The evidence as to Mrs. Neff is insufficient to support the verdict as against her."

■ We do not find where this court has promulgated an exact rule applicable to all cases as to what degree of proximity would constitute such presence of the husband as to raise a presumption of coercion by him. Seemingly each case must be governed by the facts peculiar to that case. However that may be, in the present case the only evidence concerning the husband was merely to the effect that the Boones had rented the premises to the Trapps. For all the record discloses the defendant and her husband might have been living separate and apart. There was no evidence that the defendant's husband had ever lived on the premises, or if so how far back. There was no evidence as to his whereabouts at the time of the search, or whether he ever paid the rent or not, or even that he was actually living.

Here the defendant did not testify and offered no testimony. In the absence of evidence on the part of the State that would show that the husband was presently living with the defendant, and the development of facts and circumstances to justify the conclusion of his presence at the time of the search, the court properly refused to find that the State's evidence made out a prima facie case of coercion and properly overruled the demurrer interposed to the State's evidence. No further evidence being interposed by the defendant, the case must be, and is, affirmed.

JONES and BRETT, JJ., concur.