Zora Lucy SANDERS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-12158.

Criminal Court of Appeals of Oklahoma.

July 13, 1955.

Rehearing Denied Sept. 14, 1955.

Walter Mathews, Cushing, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the county court of Payne County in case No. 8386 with the offense of leaving the scene of a collision; and also charged in the same court in case No. 8387 with the offense of operating a motor vehicle while under the influence of intoxicating liquor, being misdemeanors, and arising out of the same state of facts. By stipulation the two cases were consolidated and tried together before a jury, resulting in a verdict of not guilty in case No. 8386, but in a verdict of guilty in case No. 8387, with punishment left to the court, the jury being unable to agree. The trial court fixed punishment at a fine of $100.

The argument of counsel on appeal that the action of the jury in finding the defendant not guilty of leaving the scene of a collision had the effect of determining that it was not defendant's vehicle that was involved in the accident, and not the defendant's car that was observed by the prosecuting witness, Thomas Everett Osborne, and not the vehicle that was followed by him after he had turned his automobile around and followed defendant's car into Cushing, is not tenable. This for the reason that the jury may have concluded, and probably did, that although it was defendant's car that side-swiped that of the prosecuting witness; the concussion was so slight, as demonstrated by the fact that it was not sufficient to even dent the fender but only scraped the paint, that the defendant was not aware of any collision.

The prosecuting witness, Thomas Everett Osborne, testified that after closing a picture show in Stillwater, where he was employed, following a Saturday night preview, that he and one Lem Picquette left Stillwater shortly after midnight on May 2, 1954, in the automobile of witness, enroute to Drumright. That about a mile or a mile and a half or two miles west of Drumright, while traveling east on Highway No. 33, they met a car traveling in a westerly direction toward Cushing. That although witness concluded that the approaching car, by reason of it being driven from one side of the road to the other, endangered him, and although witness in effort to avoid a collision drove partially off the road, that the approaching vehicle brushed his car slightly on the left rear fender and scratched it. The damage was negligible.

Witness testified that he proceeded to where he could turn around and then commenced to follow the car that scraped his car. That his companion Picquette took down the license number and that he kept honking his horn and flashing his lights in an attempt to get the car ahead of him to stop, but without success, so that he followed the car in question into Cushing. He further stated that he could tell that it was a woman who was driving the car, and that she had a man companion in the car. That the car turned into a side street and entered a park and witness followed and observed the man and woman get out, walk down in

front of a house near the park gate and sit down on a bench in front of the house, and witness drove into the park and observed the man and woman enter the house. Thereafter witness and Picquette drove to the police station in Cushing and advised two police officers that they had observed a car being driven on the highway from one side of the road to the other, and that it had side-swiped a fender sufficiently to scratch it, and that there were a number of near collisions with other motor vehicles.

Osborne, Picquette and the two policemen went to the home where Osborne testified he had seen the man and woman enter. They knocked and Charles Sanders came to the door and admitted them. They made inquiries as to his wife, and found that she had retired in a room opening into the living room. Osborne and the officers said that the wife, the defendant, had gone to bed fully dressed, though the evidence of the defense showed that she had on a night gown and had to dress with the officers present, though they turned their backs. The officers, from observation of defendant, concluded that she was intoxicated and asked her to accompany them to the police station. They testified that defendant had a strong odor of alcohol on her breath, that she was wobbly on her feet and that "she was not ready to fall down, but the police helped her to get out of the house into the police car and to the police station." It was the conclusion of witness Osborne and the police officers that defendant and her husband were both drunk.

O. O. Rowden, Cushing policeman, testified that he observed when they first arrived at defendant's home that the car in question was parked in a ditch 50 to 75 feet north of the Sanders residence. Said he:

"A. We went on to the house and knocked on the door. Mr. Sanders said, 'Come in'. We went in and asked about the hit and run accident. We asked if they would go to the police station and talk to the patrolman. Since it happened out of town, it was none of our business. It was the patrol's business. They agreed to go to the station with us.

"Q. Was there any threat or intimidation on them to go, or was it a request? A. Only a request.

"Q. Was there any hesitation on the part of either Mr. and Mrs. Sanders to go with you? A. No, sir."

Herb Carpenter, the other policeman, testified to going to defendant's home. He stated:

"Q. What was said by you or by Mr. Rowden or anyone there, and what was said by Mr. and Mrs. Sanders? A. Rowden asked them if they would go to the police station and talk to the patrol and make some arrangements on this accident. They voluntarily went.

"Q. Did you all go to the police station? A. Yes."

The officers admitted that they did not have a warrant for the arrest of either the defendant or her husband, and the evidence failed to show that an arrest was attempted by the prosecuting witness of the man and woman he saw get out of the car he had been following, see Tit. 22 O.S.1951 §§ 187, subd. 3, 202–205, or that he got close enough to them to smell the breath of the defendant prior to the time witness returned and entered her home with the officers. There was no evidence even to show any irregularity in the conduct of defendant and her husband after getting out of the car and prior to entering their home that would be indicative of intoxication.

The police officers claimed that at no time did they tell the defendant or her husband that they were under arrest.

Carl Pugh, a highway patrolman stationed at Cushing, testified that he was at home in bed, and on the morning of Sunday, May 2 he received a call from the desk sergeant at the Cushing police station. He arrived at the station at approximately 2:15 A.M. Mr. and Mrs. Sanders, the two young men and the two police officers were there when he arrived. They were in the radio room. He observed Mrs. Sanders' condition that morning, that her faculties were impaired and she was, in his opinion, under the influence of some form of intoxicant. He

concluded that she was drunk and for such reason he placed her in jail. He said that in his opinion the husband was also drunk.

The defendant in her own behalf testified that on the night in question she left Drumright at 11:55 P.M. and drove her car straight to Cushing to her home; that she had attended an American Legion dance and after it was over there was a long string of cars going westward, several in front and several behind her; that she never heard or saw her car come in contact with any other car; that due to a lot of loose dirt in the drainage ditch in front of her house, which was situated on a half lot only, she did park it in the street in front of a neighbor's home; that after she arrived home she undressed and went to bed; that afterwards two police officers, accompanied by two other men, came to her home and told her that she and her husband had to go to the police station. She further testified that she had drunk no intoxicating beverage that night, but had taken liquid medicine, prescribed by her physician just before going to bed.

Barbara Lewis testified that on the night in question she attended the dance in Drumright that the defendant attended, and after the dance she was in a car following that of defendant, and followed her car at about a car length distance all the way from Drumright to Cushing, and that on the way there was a long line of cars going westward; that she danced with Mrs. Sanders that night and Mrs. Sanders conducted herself in a normal way.

Colleen Brinker testified that she saw the defendant at the dance in question on the night in question, that she talked with her and noticed nothing about her demeanor indicative of drunkenness.

Anabelle Freeland testified that she was staying in the home of Mr. and Mrs. Sanders on the night in question; that she occupied one of the bedrooms and was awakened when they returned from the dance. That she heard the officers when they came in the house and at the time they came in Mrs. Sanders was undressed and in bed; that the officers who came in the house ordered Mrs. Sanders to get up and get dressed, and to go to the police station with them, on account of their car being involved in an accident on the highway.

Charles Sanders, age 59, testified on direct examination that the defendant was his wife, stated that on the night in question he and his wife had attended a dance in Drumright; that his wife, the defendant, did the driving; that she acted under his direction. Witness denied that either he or his wife had drunk any intoxicating liquor that day. He stated that he worked at Tinker Field and stayed in Shawnee, but on week-ends he and his wife would usually go to their home in Cushing. He stated that he rode from Shawnee to his work with other parties.

On cross-examination witness admitted that he had plead guilty to drunken driving and his license to drive had been revoked; said that he got his driver's license in just before the trip in question but that he had not driven in so long and in fact had driven their car very little because his wife did the driving.

Witness admitted that he had plead guilty in the common pleas court of Oklahoma County in 1946 to a charge of leaving the scene of an accident and that his driver's license was at that time revoked for nine months. He further admitted that in the same court in 1952 he plead guilty to a charge of drunk driving, and in the same court in March, 1953, plead guilty to a charge of driving while drunk.

This completed the evidence.

Defendant in brief fails to follow the mechanical structure required by Rule 7 of this court, 22 O.S.A. c. 18, Appendix, but from a study of his brief it appears that the chief question presented is whether there was sufficient evidence to show that the defendant was intoxicated at the time and place of the alleged commission of the offense of operating a motor vehicle while under the influence of intoxicating liquor, as well as the associated question of whether sufficient evidence was adduced by the State to overcome the presumption that the accused committed the alleged offense (if committed) while under the influence and duress of her husband.

Defendant urges in effect that the only evidence submitted to positively identify her as the person operating the motor vehicle in question and to show that she was in fact intoxicated, was obtained by an illegal invasion of her home at a time remote from the time of the alleged act, and by an illegal arrest that followed.

We have studied the record carefully, and it forces the conclusion that there was an arrest at the home of the defendant (although attempted to be denied by the police officers at the time of trial), who with her husband were actually taken into custody by the police officers of the city of Cushing and committed to the city jail, although the officers did not act under authority of a warrant of arrest, and the misdemeanor charged was not committed in their presence.

By the provision of Section 30 of Article II of the Constitution of Oklahoma, it is provided that:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

This provision is almost identical in language with the Fourth Amendment to the Constitution of the United States.

Where timely objection is made, evidence obtained by an illegal invasion of one's home must be excluded by the trial court. This principle was early adopted by this court, and has repeatedly been adhered to under varying fact situations since that time. And while the application of the principle has usually arisen in cases involving illegal search and seizure, and where tangibles involved, there is no logical reason that occurs why the rule should not apply to any manner or kind of evidence so illegally obtained. Story v. State, 97 Okl.Cr. 116, 258 P.2d 706. And see the basic case of Gore v. State, 24 Okl.Cr. 394, 218 P. 545; 24 A.L.R. 1421. Also Brooks v. State, 32 Cr. 72, 240 P. 136; Gatewood v. State, 57 Okl.Cr. 200, 46 P.2d 962; Gragg v. State, 72 Okl.Cr. 189, 114 P.2d 491; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (involving prints, paper); United States v. Butler, 10 Cir., 156 F.2d 897; One 1949 Pickup Truck, etc. v. State ex rel. Rhoads, 206 Okl. 36, 240 P.2d 1107.

The outstanding feature of the constitutional provision quoted and that secures for our citizens a measure of freedom not enjoyed by the majority of the peoples of the world, is the clause that declares "The right of the people to be secure in their persons, houses, * * * against unreasonable searches or seizures" etc. Thus our citizens are guaranteed the right of personal privacy. See generally Brandies and Warren, "The Right to Privacy", 4 Harvard Law Review, 193 (1890). See also Boyd v. United States, supra; Entick v. Carrington, 19 How.St.Tr. (Eng.) 1030. If this privacy is to be violated it must be under a procedure affording safeguards for the protection of individual rights, as set out in the section and article of our Constitution that we have hereinabove quoted in full.

We therefore are of the opinion that the evidence obtained by an unlawful invasion of defendant's home, and even of her bed chamber, was inadmissible in evidence on the interposition of timely objection by the accused. Such action on the part of officers tends to cause disrespect for the law and loss of confidence of citizens in law enforcement agencies. It demonstrates the need for every municipality to institute, with the aid of municipal attorneys a program of training for officers. We are confident that such mistakes as demonstrated in this case come about by ignorance of the law and procedure, rather than malicious motives.

It is argued by the State that the defendant failed in the trial court to seasonably raise the question of the illegal method of obtaining evidence in the home of defendant of her intoxication, and that there was other evidence, in addition to that discovered by the officers after entering defendant's home showing her intoxication.

We do not find any direct evidence of the intoxication of the defendant, other

than that discovered by reason of the unlawful invasion of her home. The fact that her car was being driven in a reckless manner by reason of swerving all over the road, though at a slow rate of speed, could have been due to mechanical defects, plain carelessness, or even by reason of a malicious impulse.

This court, however, has many times held that an accused may waive a constitutional right personal to him. In re Poston, Okl.Cr., 281 P.2d 776; Ex parte Moutaw, 94 Okl.Cr. 377, 236 P.2d 509; Martin v. State, 92 Okl.Cr. 182, 222 P.2d 534; Coffe v. State, 59 Okl.Cr. 121, 56 P.2d 1194; Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646; Walker v. State, 10 Okl.Cr. 533, 139 P. 711; State v. Frisbee, 8 Okl. Cr. 406, 127 P. 1091.

We have studied the record herein very carefully and do not find where any objection was at any time interposed to the testimony of the prosecuting witness and the two police officers concerning their testimony describing the condition of the defendant as to intoxication discovered by them after they admittedly entered her home without authority of a warrant to arrest. The first objection to the testimony of the officers concerning the alleged condition of the defendant as to intoxication, so discovered in her home, was after the evidence for both the State and the defendant had been completed, and after the State and defendant had rested their case. At such time a demurrer was interposed, which was in fact in the nature of a motion to strike as to that part of the evidence obtained by the officers and prosecuting witness while at the home of the defendant.

In Gragg v. State, supra, although involving an illegal search followed by an arrest, rather than simply an illegal arrest, the defendant there failed to interpose an objection to evidence obtained by an illegal entry until after the State had rested its case. On appeal the court quoted from Brooks v. State, 32 Okl.Cr. 72, 240 P. 136, 137, where it is said:

"It has been held that to make such objection available, it must be interposed at the first opportunity present-

ed. * * * it should have been made, either at the beginning of the trial, by a motion to suppress or reject such evidence, or in the course of the examination, so soon as it became apparent that the state would rely upon it. Otherwise defendant waives his right to be heard on this question.

"A defendant will not be permitted to speculate on the outcome of evidence said to have been procured by an illegal search and seizure, without objection thereto, and then when it later appears that such evidence operates to his prejudice seek to take advantage of his right to make such objection for the first time."

See also Fulbright v. State, 96 Okl.Cr. 36, 248 P.2d 651; White v. State, 81 Okl.Cr. 399, 165 P.2d 151; Cornett v. State, 96 Okl. Cr. 165, 249 P.2d 1016.

In reply brief defendant argues that it was only from the cross-examination of the policemen and prosecuting witness that the illegality of the search was brought out. No doubt counsel from questioning defendant was aware that no warrant of arrest was served on her the night the policemen entered her home and aroused her from her bed. In fact, the testimony of the prosecuting witness and the two policemen on direct examination, by their effort to make it appear that the defendant volunteered to accompany them to the police station and that they did not place her under arrest shows that they had no authority to enter the defendant's home. Policeman Rowden had said that the prosecuting witness did not sign a complaint when he first came to the police station, but said that he would do so. He said further: "We asked if they [defendant and her husband] would go to the police station and talk to the patrolman, since it happened out of town, it was none of our business. It was the patrol's business."

Witness Osborne, the State's first witness, admitted on cross-examination that he never signed any complaint against the defendant until after he and the two policemen had entered defendant's home and caused her to accompany them to the police

station. At that time counsel should have moved that all testimony given by him concerning the observation of the defendant in the home be stricken and have objected to any further evidence discovered by the witness as a result of the unlawful invasion of defendant's home; and he should have objected to any evidence from the two policemen obtained by their entrance to defendant's home and following her subsequent arrest by them, as the fact that the officers in so many words claimed that they did not advise defendant that she was under arrest, nevertheless does not overcome the fact that their conduct in entering her home armed and insisting that defendant get out of bed and accompany them to the city jail where they actually placed her in jail, constituted an actual arrest. Counsel should have moved that their evidence be stricken from the consideration of the jury. That was not done, but cross-examination was had and the defendant thereafter introduced her evidence and rested. A demurrer was then interposed. We are forced to hold that the objection came too late. The decided cases from this court admit of no other ruling.

■ It follows that the failure of the trial court to give defendant's requested instruction No. 1, advising the jury to disregard any evidence obtained by means of the entry of defendant's home, stated to be illegal, was not error.

If in the course of the trial, when it first became apparent to counsel that the officers invaded defendant's home without authority of a warrant of arrest or a search warrant, he had objected to any testimony or evidence obtained by means of such entry, the trial court would probably have orally and instanter instructed the jury that all evidence bearing on the question of the intoxication of the defendant, or other evidence obtained by means of such entrance to her home, could not be considered, and thereafter if a demurrer had been interposed and by reason of the insufficiency of the evidence to make out a case, would have sustained the demurrer. Failing and with proper exceptions reserved, it would have been the duty of this court to have reversed and remanded the case.

■ If in this case there had been evidence of the intoxication of the defendant in addition to that obtained by the illegal entrance of the home, then even though the court had stricken from the consideration of the jury the evidence so illegally obtained, it would not have been out of line for the court as a further precaution to have given an instruction similar to defendant's requested instruction No. 1, above mentioned. The wise thing to do in cases of this nature, however, assuming that counsel from questioning his client becomes aware of the illegality of the entrance to the home is, prior to trial, to file a motion to suppress, take the initiative, and support the motion by evidence, and get the question passed on so that the jury will never have opportunity to even become aware of the evidence that may have been obtained by an illegal arrest and invasion of one's home or premises.

Defendant asserts that it was error for the court to fail and refuse to give her requested instruction No. 2, involving the presumption that a married woman committing a criminal act in the presence of her husband acts under coercion as provided by Tit. 21 O.S.1951 §§ 157, 159. The court did, in instruction No. 14, actually given, advise the jury in accordance with the statutory provision, and substantially covered the subject. The instruction given reads:

"Marriage does not take from the wife her general capacity to commit crime, but casts on her the duty of obedience to her husband, and, in absence of proof to the contrary, it is presumed that the commission of the acts charged in the presence and with the assent of her husband is the result of restraint or coercion. The presumption that a married woman committing criminal acts in the presence of her husband acts under coercion is very slight and may be rebutted by slight circumstances, but there must be some evidence to rebut it. Therefore, if you find no evidence that the defendant acted freely, of her own free will, volition and initiative, you should acquit the defendant. On the other hand, if you find from the evidence that the defendant did act freely, of her own free

will, volition and initiative, you may treat this defendant as any other person who is not a married woman."

This instruction, while open for improvement, appears to be in harmony with the decided cases from this court. Winer v. State, 36 Okl.Cr. 316, 253 P. 1025; Sentell v. State, 61 Okl.Cr. 229, 67 P.2d 466; Paris v. State, 66 Okl.Cr. 236, 90 P.2d 1078; O'Donnell v. State, 73 Okl.Cr. 1, 117 P.2d 139; Kelso v. State, 96 Okl.Cr. 367, 255 P.2d 284.

In Stanley v. State, 97 Okl.Cr. 92, 258 P.2d 690, we said that it is not error to refuse to give a requested instruction where the substance of such requested instruction is included in the instructions which are given.

Tit. 21 O.S.1951 § 159 provides:

"The inference of subjection arising from the fact of coverture may be rebutted by any facts showing that in committing the act charged the wife acted freely."

Interpreting this provision of the statute, this court in O'Donnell v. State, supra, said:

"The view adopted by the decisions of this court, is that the presumption is slight, and may be rebutted by slight circumstances. The individual facts in each case must be considered to determine whether there has been proof to overcome the presumption."

From the testimony of defendant's husband, he had driven the car in question but a few times. The wife had been in the habit of driving the car, and it is apparent that she freely and voluntarily drove this car. We find nothing to the contrary in the evidence in the case.

In a fairly late case of Powell v. State, 88 Okl.Cr. 404, 203 P.2d 892, the defendant Eva Powell was tried and convicted of driving a motor vehicle while under the influence of intoxicating liquor. Her husband was riding in the car with her at the time of the arrest. They too were on their way home after attending a dance at a night club. According to the testimony of the arresting officers, she and her husband were both drunk. In the body of the opinion, 88 Okl.Cr. at page 412, 203 P.2d at page 895, this court said:

"Defendant has raised a number of assignments of error which we will not discuss. One is that the defendant at the time she was charged was accompanied by her husband, and the presumption is that she was under duress from him, and therefore could not be charged individually.

"This contention may not be sustained, for the reason that under all the facts in the case, it is conclusive that the wife was acting freely, and not under any subjection from her husband. Tit. 21 O.S.1941 § 159."

A consideration of the entire record convinces us that the defendant herein in the operation of the motor vehicle in question acted freely, and not under any subjection from her husband.

This evidence of intoxication, though denied by defendant and her husband, is sufficient to support the verdict and judgment. Menefee v. State, 97 Okl.Cr. 149, 260 P.2d 413; Ryan v. State, 97 Okl.Cr. 119, 258 P.2d 1208.

The judgment is affirmed.

JONES, P. J., and BRETT, J., concur.