EARL HERREN v. STATE.

No. A-10166.   Oct. 21, 1942.

(130 P. 2d 325.)

252

Holmes H. Colbert, of Sulphur, for plaintiff in error.

Mac Q. Williamson Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. Earl Herren was charged in the district court of Murray county with the crime of burglary in the second degree, after a former conviction of a felony, was tried, convicted, the punishment left to the court, who thereupon sentenced the defendant to ten years and six months in the State Penitentiary, from which judgment and sentence an appeal has been taken.

We shall first consider two of the assignments of error presented by counsel for defendant which refer to the same occurrence and which properly should be discussed together. These two assignments are:

"Error of the court in giving further instructions to the jury after they had begun deliberation of their verdict in the absence of the defendant and his counsel.

"Error of the court in suggesting to the jury the nature of the verdict to be rendered by them and of advising the jury as to law and evidence after the case was submitted to the jury for their deliberation and after they had been unable to agree upon the verdict, all in the absence of the defendant and his counsel."

The record discloses that the trial court kept the jury deliberating for several hours after the cause had been submitted to them. The record reveals that at 1:15 a.m., after the jury had been deliberating several hours and after counsel for defendant had left the courtroom and defendant was in bed in the county jail at the courthouse, the trial court had the jury brought to the district courtroom, and, in the absence of defendant and his counsel, the following proceedings were had:

"By the Court: Gentlemen, have you arrived at a verdict in this case? By members of the jury: No, sir. By the Court: Let me ask you if it would help any if you would go get a cup of coffee? By the jury: No, sir. By the Court: The defendant is not here, but his attorney waived his presence and the defendant himself has gone to bed, hasn't he? By the sheriff: Yes, sir. By the Court: The court might say this, for the jury's benefit, that under the laws of this state, that if the jury likes, it may find the defendant either guilty or not guilty, in accordance with the court's instructions, and if you should find the defendant guilty and prefer to do it, the punishment can be left to the court in this case. In that connection, I might say this: That there is some doubt in the court's mind about the matter of the time that the defendant would draw in this case. That is, with reference to whether ten years would be the maximum or ten years the minimum. As you gentlemen know, I instructed you first one way and at the instance and after argument of the Attorney General it was changed, but we have been arguing about it ever since the jury has been out. By one of the jurors: You ain't the only ones that has argued. By the Court: I would like to ask this, that if the court would assure you that the matter would be given proper consideration and the attorneys have an opportunity to argue that out, and you were permitted in the event of a conviction to leave the punishment to the court, if that would assist you in arriving at a verdict in the case? By one of the jurors: I believe it would. By the Court: Would that help you? By another juror: I believe it would. By the Court: How do you other members of the jury feel about it? Another juror: I feel that it would. By the Court: Do all the rest of you feel that it would help you in arriving at a verdict in the case? By two of the jurors: I think it would. —I am quite sure it would. By another juror: Yes, sir. By the Court: Do you think it would help, you Gentlemen? (indicating) By one of the jurors: I am pretty sure it would. By the Court: How do you folks feel about it? By other jurors: I am pretty sure

about it. By the Court: How about you? (indicating) By one of the jurors: I don't know. By the foreman of the jury: Would we be allowed to ask a question about these instructions? By the Court: Yes, sir. By Mr. Day, a member of the jury: About the evidence that we have, about what kind of evidence that the jury could render a verdict on? By the Court: Well, yes. I don't understand you? By Mr. Day: What I mean is, could we ask a question as to whether that we can render a verdict—whether this verdict can be rendered on just circumstantial evidence that links all of this together, or would we have to have proof that he had actually been caught with this stuff or that he had been seen with it? By the Court: I don't have the instructions, but the court instructed you with reference to circumstantial evidence that the circumstances and each one of them must be consistent with one another and inconsistent with any hypothesis that he wasn't guilty. This is a circumstantial evidence case. By Mr. Day: That is the way I understood it. By the Court: Nobody testified that they saw the defendant get the stuff in question, so it is necessarily a circumstantial case. The court would not be allowed to comment on the evidence, you understand that, even if the defendant were here, and we want to preserve his rights the same as if he were here. By one of the jurors: Would it be possible if we could agree and would agree to leave it up to the court? By the Court: What do you mean? By the juror: If we can't agree whether he is guilty or not guilty and if we could all agree to do it, could we leave it up to the court. By the Court: You mean let the court decide as to whether he is guilty or not guilty? No, sir. That would do away with his right to a jury trial. If you should decide that he is not guilty, you will acquit him, and if you should decide he is guilty and want to leave the punishment to the court, you may do that. There are cases when the guilt of the defendant is left to the court, but that is where a jury is waived. In a case where a jury is demanded, the jury has to decide whether the defendant is guilty or not, and the court, as I said, in the proper cases can determine the punishment, if any. Did I tell you or the bailiff tell you that

since we have already gone past the midnight hour that you will be entitled to your remuneration for today, as you know, and as far as I know, there is no necessity for staying any longer on that score. By one of the jurors: A verdict is what we are after and I believe it can be arrived at. By the Court: If that is true, and I think that most or all of you have indicated that it is, then you go back to your jury room and if you can arrive at your verdict pretty soon, we will wait. Have you any further questions? All right, you may go. (Whereupon, the jury retired to the jury room for further deliberation.) Thereafter, and at 1:50 o'clock a.m., of the said 29th day of May, 1941, the jury returned to the courtroom and the following proceedings were had and entered herein, to wit: By the Court: Gentlemen, have you arrived at a verdict in this case? By the foreman of the jury: Yes, sir. By the Court: Would you gentlemen sit here just a minute, please. Get the defendant, please, Mr. Sheriff. (Whereupon, the defendant was brought into the courtroom and the following proceedings were had, to wit:) By the Court: Gentlemen, have you arrived at a verdict in this case? By the foreman of the jury: Yes, sir. By the Court: Pass the verdict to the bailiff and he to the clerk and the clerk will read and record the verdict. Let the record show, Mr. Reporter, that defendant's counsel advised the court clerk that his presence might be waived at the receiving of the verdict. (Whereupon, the court clerk read the verdict, after which the following proceedings were had, to wit:) By the Court: Now, Gentlemen, the verdict as it stands is not in proper and legal form. I might say for the benefit of the defendant here that in the absence of his counsel and in answer to questions by the jury on their return, that the court suggested a while ago that if it would help the jury in arriving at a verdict in the case that they could fix the guilt of the defendant, that is, whether he is guilty or not guilty, and if they liked and if they found the defendant guilty then the court could fix the punishment. Gentlemen of the Jury, if that is your idea, to leave the punishment to the court you will have to specify that on your verdict. You may do that here in the courtroom. By the foreman of

the jury: That was our idea. By the Court: Let me suggest Mr. Foreman, that you write in there—Strike out the words 'and fix his punishment at blank years' and say 'leave the punishment to the discretion of the Judge.' By the Foreman: Fix the punishment at the discretion of the judge of the court, or which? By the Court: Either one, and mark out those other words. Now, let the record show that in the absence of the defendant's counsel, that the defendant's counsel having requested the court that all of defendant's rights be preserved, that the defendant objects to all of this and his objections are overruled, exceptions allowed. The clerk will read the verdict as amended."

Need we comment on such grossly improper conduct? In the first place, there appears no good reason why the jury should have been kept deliberating until that late hour. Nerves become frayed, tempers short and it is not conducive to fair verdicts to keep a jury deliberating until 2 o'clock in the morning. It would have been much better at the time the case was finally submitted to the jury to have directed them to begin their deliberation, and, if they had not reached a verdict by 10:00 p.m., to retire and resume their deliberation the next morning when their minds would be refreshed. Laying this question aside, however, we consider the far more serious question of the prejudicial effect of the statements which were made.

The remarks of the trial court clearly indicated to the jury that he thought they should return a verdict of guilty and was an invitation to them to return such a verdict. The trial court had first instructed the jury that in case they found the defendant guilty they should fix his punishment at any term in the penitentiary not exceeding ten years. The defendant was being tried for the crime of burglary in the second degree, after a former conviction of a felony, and the punishment in case of a

conviction for such offense was any term in the penitentiary not less than ten years. Spann v. State, 69 Okla. Cr. 369, 103 P. 2d 389; 21 O. S. 1941, § 51, 1931 O. S. § 1817. When this palpable error in the giving of said instruction was called to the court's attention by the Assistant Attorney General, who was present as a special prosecutor, the court substituted a correct instruction that in case the defendant should be found guilty he would be punishable by imprisonment in the penitentiary for any term not less than ten years.

When the court advised the jury at 1:15 a.m. in the absence of defendant and his counsel that "there is some doubt in the court's mind about the matter of the time that defendant would draw in this case," and assuring the jury that if they found him guilty he would give the matter proper consideration and allow the attorneys to argue that question, such conduct was clearly an abuse of the defendant's rights. It is apparent that some of the jury was not even convinced of the guilt of the defendant, as one of them suggested that it might be better to leave the question of guilt and punishment both to the court. It is doubtful if the jury had been advised definitely that the minimum punishment would have been ten years in the State Penitentiary, whether they would have ever returned a verdict of guilty. The case against the defendant was extremely weak and based wholly on circumstantial evidence. He was not found in possession of the property. The chief circumstance against the defendant was the fact that he was seen in the store which was burglarized the afternoon before the burglary was committed. In order to secure the conviction of the defendant, the court admitted evidence of other crimes allegedly committed by the defendant. The admissibility of this evidence will be hereinafter discussed.

In Graham v. State, 73 Okla. Cr. 337, 121 P. 2d 308, it is stated:

"If after the jury has retired to deliberate on their verdict it becomes necessary for the court to communicate with them or to give them additional instructions, they must require their officer to conduct them into open court, and such 'information required must be given in the presence of or after notice to the county attorney and the defendant or his counsel, or after they have been called.' "

This question was well presented in the brief filed by counsel for defendant. The attorneys for the state have chosen to ignore this contention. Their brief on this question is as silent as the tomb. This court assumes that where the defendant raises an issue in his brief, which is well supported by legal authority, and counsel for the state does not mention the issue by argument or citation of legal authority, counsel for the state is unable to condone the conduct about which complaint is made. It would have been much better in the instant case if counsel for the state had filed a confession of error months ago and called it to the attention of this court so that the matter could have, at that time, been reversed and remanded for a new trial without the resultant delay which has occurred by allowing the case to come up for consideration in its numerical order.

The chief answer which counsel for the state has made in his brief to all of the contentions of the defendant is, "This is a bad man and should serve the rest of his days in the penitentiary." This court is well acquainted with the fact that the defendant is a bad character. The writer of this opinion was the author of three other opinions in which this defendant was involved and is thoroughly acquainted with his criminal record. Herren v. State, 72 Okla. Cr. 254, 115 P. 2d 258; Herren v. State, 74 Okla.

Cr. 424, 127 P. 2d 215; Herren v. State, 74 Okla. Cr. 432, 127 P. 2d 384. The long criminal career of defendant was discussed in Herren v. State, supra, 74 Okla. Cr. 432, 127 P. 2d 384.

We are unacquainted with any rule of law which says that appellate courts should ignore all constitutional provisions and rules of criminal procedure and affirm a conviction of a defendant merely because he is a bad man. This court will see that every defendant charged with crime, regardless of his previous criminal record, is accorded a fair and impartial trial. This defendant may be guilty of the crime charged, but the rules of criminal procedure which we must follow are for the trial of the innocent as well as the guilty, and if we should sustain the conviction of this defendant despite the star chamber proceedings which occurred long past the midnight hour, in the absence of both defendant and his counsel, then such practice might later be used to convict an innocent man merely because the state's attorney and the trial court were thoroughly convinced that he was guilty.

There is one other assignment of error which merits discussion. The trial court, over the objection of the defendant, allowed the state to prove many other crimes allegedly committed by the defendant for the following purpose, as he instructed the jury in instruction No. 8:

"* * * Such evidence has been admitted and is to be considered by you only for the purpose of throwing light upon the question of the guilt or innocence of the defendant of the specific charge contained in the information."

In Nemecek v. State, 72 Okla. Cr. 195, 114 P. 2d 492, 494, 135 A.L.R. 1149, it is stated:

"The general rule is that when a defendant is put upon trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of that

offense alone; and evidence which in any manner shows, or tends to show, that he has committed another crime, wholly independent, even though it be a crime of the same sort, is irrelevant and inadmissible.

"As an exception to the general rule, evidence of other offenses recently committed, similar to that charged, is admissible when it tends to establish a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or when it shows or tends to show guilty knowledge or intent in the commission of the offense.

"When the state offers to prove other alleged offenses for the purpose of showing a common scheme, plan or intent, the proof must clearly come within the exception to the general rule; and where they are distinct and unrelated offenses, or remote as to time, an objection by the defendant to the proof should be sustained."

See also Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L.R.A 1917D, 383; State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779; Perdue v. State, 40 Okla. Cr. 9, 266 P. 514; Ricker v. State, 39 Okla. Cr. 58, 263 P. 160; Stanfield v. State, 30 Okla. Cr. 82, 235 P. 256.

We have been furnished with no authority which says that distinct and unrelated crimes may be admitted in evidence for the purpose of, as stated by the trial court, "shedding light upon the question of the guilt or innocence of the defendant." In none of the instances where the court admitted evidence of other offenses allegedly committed by the defendant were they connected with the offense allegedly committed herein. Some of the articles stolen in the burglary for which the defendant was charged were recovered at the store of his brother, Lee Herren, in Carter county, several months after the burglary was committed. One witness testified that she saw the defendant Earl Herren unloading some merchan-

dise at Lee Herren's store in the fall. This was four months after the burglary charged herein. She saw the defendant on this occasion, which was two or three days after the burglary of the Holmes store in Pontotoc county, and it was on the basis of that testimony that a conviction of Earl Herren was sustained in one of the Herren Cases hereinabove cited, as part of the loot taken in the Holmes burglary was identified at the Lee Herren store.

There would have been some basis for the admission of these other burglaries if they had all happened the same night, or about the same time, in order to show a series of crimes committed as a part of a continuous scheme or plan, but none of these other alleged offenses were committed within four months of the Lacy burglary involved herein. They are distinct and unrelated offenses, even though of the same kind, and evidence as to the same should not have been admitted.

One of the officers who testified stated that he was at Lee Herren's store when many merchants came and there identified certain articles in the store as having been taken from their places of business. There was no attempt to connect this defendant with many of the alleged thefts. This officer testified over objection of defendant that he was present when store owners from Madill and many other places came there and "located and identified their stuff."

In the first place, this testimony of the sheriff was inadmissible because it was hearsay. The state cannot bolster its case by having persons present when a party sees certain goods which he claims were stolen from him and having him there state in the presence of the other parties that those are the stolen goods for the purpose of making witnesses of the parties who heard the statement. In the second place, this testimony was inadmis-

sible for the reason that no connection with the defendant was shown.

For the reasons hereinabove stated, the judgment of the district court of Murray county is reversed and remanded, with instructions to grant the defendant a new trial and for further proceedings in conformity with the views herein expressed.

BAREFOOT, P. J., and DOYLE, J., concur.