### In the Matter of Eloise Washburn KRAHN.

### DEPARTMENT OF PUBLIC SAFETY, State of Oklahoma, Appellant,

v.

### Eloise Washburn KRAHN, Appellee.

### No. 49585.

Supreme Court of Oklahoma.

Sept. 27, 1977.

Charles L. Hill, Associate Counsel, Dept. of Public Safety, Oklahoma City, for appellant.

James T. Branam, Coalgate, for appellee.

BARNES, Justice.

Appellant, Department of Public Safety of the State of Oklahoma, revoked the driver's license of Appellee, Eloise Washburn Krahn, pursuant to 47 O.S. 1975 Supp., § 753. On appeal to the District Court under 47 O.S. 1975 Supp., § 755, it was held the licensee had not knowingly refused to submit to a chemical test, and the Trial Court set aside the license revocation. Appellant brings this appeal.

On December 27, 1975, Appellee went to a dance at Lehigh, Oklahoma. While dancing a form of square dance, she was tripped and struck her head. Appellee had had a total of three beers that evening. Shortly after the fall, Appellee was proceeding down the highway towards Coalgate, Oklahoma, when at approximately 1:40 a.m., on December 28, 1975, her vehicle was observed by a highway patrol trooper passing him at 65 MPH in a 55 MPH zone.

Upon stopping the vehicle, the trooper asked Appellee for her driver's license, which she had a difficult time finding. When the trooper helped Appellee out of

her vehicle and took her to the back of her car to perform a field sobriety test, he noticed a strong odor of alcohol, that she had a flushed face, bloodshot eyes, sluggish speech, and that she was slow to react.

The trooper testified he then took Appellee to his patrol car and advised her she was under arrest. He stated Appellee became belligerent and called him several choice words. The trooper then advised Appellee of her rights under the implied consent law from a prepared card. The trooper testified he read from the card several times, but Appellee made no response other than she did not understand and remained silent when the trooper tried to obtain a response as to which test she would take. The trooper said it was his opinion that Appellee was coherent and understood.

Appellee was then transported to the county jail and again advised of her rights to a chemical test and the results of a refusal. She remained silent. At one point, Appellee blew into the breathalyzer machine, but not properly so as to activate the machine. When Appellee failed to cooperate, the trooper explained the refusal form to her, but she purportedly still refused to submit to a test. The trooper then placed Appellee in jail. In any event, no test results were obtained and a report was filled out to the effect that Appellee refused to take the test.

When admitted to the emergency room of the local hospital at 10:30 a. m., the morning following her arrest, Appellee was diagnosed by Dr. B. as having a mild cerebral concussion. The doctor testified he did not know whether she had had any alcohol at the time of the arrest, since he did not see her until the next day. He further indicated that Appellee seemed to be semi-conscious when admitted to the hospital, that she could have had a loss of memory as a result of a blow to her head, and that it is possible that one could be in a state of semi-consciousness for a moderate length of time thereafter.

Appellee was sent notice of revocation of her driver's license for refusal to submit to a chemical test. At Appellee's request, an administrative hearing was held March 18, 1976, before Lolly Catching, a hearing officer appointed by the Commissioner of Public Safety. The hearing officer sustained the revocation, and the Appellee appealed from said order to the District Court of Coal County. After a hearing on April 8, 1976, the Trial Court set aside the revocation of the Appellee's driver's license for the reason that the Appellee did not knowingly refuse the chemical test. Neither side moved for a new trial or judgment N.O.V. Appellant brings this appeal.

Appellant's brief sets forth the single proposition that the Trial Court erred in that there was insufficient evidence upon which the court could base its decision. Appellant cites no Oklahoma law to support its position, but relies on a number of cases from other jurisdictions, including *Hoban v. Rice*, 25 Ohio St.2d 111, 267 N.E.2d 311 (1971), *and State v. Hurbean*, 23 Ohio App.2d 119, 261 N.E.2d 290 (Ohio App., 1970).

In *Hoban, supra*, the Ohio Supreme Court considered the question of whether a refusal to take a sobriety test must be knowingly and intentionally made. That Court said:

" * * * The licensee's words, acts, overall conduct and other manifestations of a willingness or unwillingness to take the sobriety test will be considered by the trier of facts in determining whether there was a refusal.

"The determination will be based on an objective standard, not a subjective standard, such as the state of mind of the licensee. The subjective state of mind of the licensee cannot control the outcome of the proceedings, and a police officer is not required to know the state of mind of the person arrested and determine whether such person understood he was refusing to submit to the test. To require that would place an impossible burden on the arresting officer.

"Appellant's lack of recollection is not inconsistent with his refusal to take the sobriety test. It is possible for a licensee to be in such a state of intoxication that he does not understand what is happen-

ing, and, at the same time, by words, acts and general conduct to manifest an unwillingness or outright refusal to take the test. Although he may later have no memory of what occurred, his mere statement that he does not remember anything that happened is insufficient to show that he did not refuse to take the test.

"If we were to adopt appellant's theory, a licensee could refuse the test prescribed by R.C. 4511.191(A) and then, at a Municipal Court hearing, testify that he does not remember anything. The result could be to nullify the effect of the statute.

\* \* \* \* \* \*

"We cannot subscribe to the defense of 'too drunk to understand' as a means of nullifying the effect of the implied-consent statute without additional legislative requirements that the refusal be intelligently, knowingly, and intentionally made."

It is to be noted, however, that none of the cases relied on by Appellant involved a factual situation in which the licensee claimed a physical lack of capacity to refuse the test as a result of an injury due to a fall, and none involved expert medical testimony that the licensee probably had a loss of memory due to semi-consciousness as a result of a fall.

The Oklahoma statute on refusal to submit to a chemical test, 47 O.S. 1975 Supp., § 753, provides:

"*If a conscious person under arrest refuses to submit to chemical testing*, none shall be given, but the Oklahoma Commissioner of public safety, upon receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways, streets, or turnpikes while under the influence of alcohol or intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license to drive and any nonresident operating privilege for a period of six (6) months; or if the person is a resident without a license or permit to operate a motor vehicle in this state, the Oklahoma Commissioner of Public Safety shall deny to the person the issuance of a license or permit for a period of six (6) months after the date of the alleged violation, subject to review as hereinafter provided. The revocation or denial shall become effective thirty (30) days after giving written notice thereof in accordance with Section 2–116 of Title 47, Oklahoma Statutes." (Emphasis ours)

Appellee urges that in cases of equitable cognizance there is a presumption in favor of the findings and judgment of the Trial Court, and same will not be set aside unless clearly against the weight of the evidence, citing *Thompson v. Smith*, 420 P.2d 526 (Okl.1966). Secondly, Appellee contends that even if error were committed, Appellant failed to show any substantial prejudice to the extent that the case should be reversed. *Missouri, Kansas and Texas Railroad Co. v. Caster*, 410 P.2d 67 (Okl.1965).

After having carefully reviewed the record, transcript and briefs, we find the uncontradicted medical testimony indicated there was a strong possibility that the Appellee was semi-conscious during the critical period and not mentally capable of refusing the chemical test. Apparently, the Trial Court agreed with the expert medical testimony and gave it more weight than the testimony of the State's witnesses.

For the reasons hereinbefore stated, we hold that there was sufficient evidence on which to base a decision that Appellee's driver's license be reinstated and that the findings and judgment of the Trial Court were not clearly against the weight of the evidence.

Judgment of the Trial Court is affirmed.

All the Justices concur.