Glen Byron GALLOWAY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-84-453.

Court of Criminal Appeals of Oklahoma.

April 18, 1985.

Cliff E. Briery, Seminole, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Glen Byron Galloway, appellant, was convicted of Murder in the First Degree in Canadian County District Court and sentenced to life imprisonment. Upon his appeal, we find the conviction must be reversed and his case remanded for new trial.

Appellant raises two assignments of error; and, because we agree with his second one that he was denied effective assistance of counsel, we do not reach the first.

The decedent, Charley Chesshir, was a neighbor to appellant and they lived on a rural road in Oklahoma City. On the morning of November 29, 1982, appellant killed Chesshir by repeatedly shooting, stabbing and beating him.

Appellant was apprehended within a few hours of the crime and confessed to his deeds. He claimed to have driven demons out of the victim at the direction of God, according to the statement he gave to Detective Rupert who interviewed him that day. He told Detective Rupert he had immediately gone home and told his wife that he had killed the Devil. He also told Detective Rupert that at some period in his life he had been on the drug LSD.

Each officer who had contact with appellant that morning and who testified at his trial, stated that appellant made repeated, vague religious statements such as "bless me, Jesus" and "thank you, God." And, each witness who testified and who had had contact with appellant near in time to the killing related bizarre behavior on his behalf. Further, there was testimony that the arresting officers recovered a white medicine bottle from near appellant's truck with the label containing the words "poison" and "methadone." This was introduced at trial, but there was no evidence of drug intoxication.

At the end of the State's evidence, without making an opening statement or introducing any evidence, defense counsel rested. The judge did agree to instruct the jury regarding the insanity defense.

Appellant's motion for new trial was interposed by a different attorney than the one who represented him at trial. At the hearing on his motion, counsel presented a number of affidavits of witnesses who had been ready and available to testify on behalf of appellant, but who trial counsel refused to call. It appears that a great deal of evidence of appellant's existing mental illness was available, and appellant's counsel failed in presenting his only defense to the jury for consideration.

The affidavits submitted with the motion for new trial included that of seven witnesses, two expert and five lay. The first was that of Dr. Borrell, a psychiatrist who had been treating appellant for three months prior to the homicide. He stated among other things that he was aware of the circumstances surrounding the incident and believed appellant's mental illness prevented him from distinguishing right and wrong at the time. He also knew from urine tests that appellant had not been taking drugs other than those prescribed in the weeks preceding the killing.

The affidavit of a psychologist who had examined and tested appellant stated it was his opinion that he could not adhere to the right.

Five lay witnesses, including appellant's wife, brother, and business partner, stated they had observed appellant in the days preceding the homicide and were available to testify, but were never called to do so, and that his behavior had been extremely irrational for a period prior to the killing. His pastor had talked with him a day after the arrest and offered their taped tele-

phone conversation in which appellant related that he believed he had killed the Devil and that he was Jesus Christ.

Apart from these witnesses, the State's expert who testified at a pre-trial competency hearing stated that appellant was suffering from delusions with paranoid ideation and from paranoid schizophrenia. This witness was not called to testify at trial.

■■■ The question of defense counsel's ineffectiveness rests on whether his or hers performance so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington*, 466 U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The proper presentation of an insanity defense initially requires evidence which upsets the presumption of sanity. *Rogers v. State*, 634 P.2d 743 (Okl.Cr.1981). This burden lies with the criminal defendant. Defense counsel in the present case was satisfied with allowing the State's evidence to make his case. However, in light of the tremendous amount of available defense evidence of insanity, and the inadequacy of the State's evidence to meet his burden, we cannot say appellant's trial was a true test of the adversarial process nor counsel's approach a reasonable fascimile of trial strategy. *Strickland*, 466 U.S. at ——, 104 S.Ct. at 2065; *Johnson v. State*, 620 P.2d 1311 (Okl.Cr.1980).

Had appellant's evidence of insanity been presented at trial, there is a substantial possibility that the State would have been unable to prove his sanity beyond a reasonable doubt. Thus, the prejudice that appellant suffered from his counsel's deficiencies is obvious. *Collis v. State*, 685 P.2d 975 (Okl.Cr.1984).

Other courts considering the denial of one's Sixth Amendment right to effective assistance of counsel have also found a violation when defense counsel has failed to investigate or present a well-founded defense. *Young v. Zant*, 677 F.2d 792 (11th Cir.1982); *Wilson v. Cowan*, 578 F.2d 166 (6th Cir.1978); *United States v. Fessel,*

531 F.2d 1275 (5th Cir.1976); *Mendenhall v. Hopper*, 453 F.Supp. 977 (S.Dist.Ga. 1978), aff'd 591 F.2d 1342 (5th Cir.1979). In *United States v. Fessel,* counsel failed to develop the only defense available to the accused, that of insanity. In that case, as herein, there was no question of the appropriateness of the defense. Failure to prepare it for trial denied the accused an adequate defense, the Court of Appeals for the Fifth Circuit held.

We find that appellant herein was denied an adequate defense. The State's evidence only suggested appellant's insanity defense. Detective Rupert had asked the accused if he knew what he had done was wrong. Appellant answered that he did know that. This statement was made known to the jury and effectively destroyed the suggestion of insanity contained in the State's evidence. Without the benefit of the defense evidence, the fact that appellant simultaneously labored under the delusion that his acts were directed and authorized by God was not made known to the jury.

For these reasons, appellant did not receive effective assistance of counsel and a reliable trial, therefore, this case is **REVERSED** and **REMANDED** for new trial.

PARKS, P.J., and BRETT, J., concur.