James H. JENNINGS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–85–129.

Court of Criminal Appeals of Oklahoma.

Oct. 7, 1987.

Rehearing Denied Nov. 5, 1987.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

P. Kay Floyd, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, James H. Jennings, was charged by Information in the District Court of Washita County, Case No. CRF–83–4, with two counts of Manslaughter in the First Degree. A jury trial was held, and a verdict of guilty on both counts was returned. The appellant was sentenced to ten (10) years on each count, to be served consecutively. From this judgment and sentence, the appellant has perfected this appeal.

On the evening of July 4, 1983, the appellant was involved in a tragic automobile collision which resulted in the deaths of Canute Police Chief Richard Oliver and his civilian passenger, Chris Spitzer. The appellant had been drinking at the Castle Club in Canute, Oklahoma. The evidence is conflicting as to the amount of alcohol consumed by the appellant. Around 10:30 P.M., the appellant left the Castle Club in his GMC Jimmy pickup truck. Apparently, the GMC Jimmy floated a stop sign as it left, catching the attention of Oliver and Spitzer, who were across the street. Oliver and Spitzer decided to follow the GMC, which was heading south on County Road. Approximately three miles outside of Canute, the GMC Jimmy turned around and began traveling north. As the GMC Jimmy topped a hill, it collided with the southbound police car. Expert testimony established that the police car was traveling at a speed of eighty to ninety miles per hour and the GMC at a speed of fifteen to twenty miles per hour. Both people in the police car were killed instantly, and the appellant suffered extensive injuries, including a broken jaw and two broken legs.

As people began to arrive at the accident scene, a reserve police officer for Canute took photographs of both vehicles. These photographs reveal that the appellant was pinned on the passenger side of the vehicle, and the driver side door was opened. A search ensued for another individual, as it appeared that someone had been thrown from the driver's side of the vehicle. When no one was found, the search was abandoned.

It took quite some time to remove the appellant from the vehicle, as his legs were pinned under the dash on the passenger side. Two police officers testified that he had the odor of alcohol as he was taken from the vehicle and placed into the ambulance. After arrival at the hospital, a nurse drew blood from appellant upon the request of one of the officers. This blood sample was submitted to the Oklahoma State Bureau of Investigation for testing of its alcohol content. The test results were admitted into evidence.

Over a month later, on August 9, a police officer and a detective went to the appellant's residence to obtain his consent to use the results of the blood alcohol test. The appellant had just been released from the hospital and was taking pain medication. This conversation was taped by the police officer. According to the tape recording, the appellant acquiesced to the test after a great deal of confusion. A few days after this confrontation, an information was filed, charging the appellant with two counts of Manslaughter in the First Degree.

About five weeks before trial, the appellant asked his attorneys, Mr. Sullivan and Mr. Burch, to investigate the possibility that he was not driving the GMC Jimmy. The appellant gave them names of several people who claimed that the appellant was the passenger rather than the driver of the vehicle. Investigation of this defense was necessary because, as indicated by trial counsel in closing arguments, appellant could not remember the events surrounding the accident. However, Sullivan and Burch summarily dismissed this possible defense because they "didn't believe it." The appellant then became worried and consulted another attorney, who encouraged Sullivan and Burch to investigate this defense. They again failed to investigate and in fact, conceded at trial that the appellant was the driver of the GMC Jimmy. The jury returned a verdict of guilty on both counts of manslaughter.

■ For his first assignment of error, the appellant asserts that he was denied

effective assistance of counsel in direct violation of his Sixth and Fourteenth Amendment rights, according to the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under the two-pronged test of *Strickland*, a defendant has the burden of showing that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* 104 S.Ct. at 2064, 2067. A reasonable probability is a probability sufficient to undermine the outcome. *Id.* at 2068. As stated in the *Strickland* case:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Id.* at 2064. Although the appellant's burden is heavy, it is the opinion of this Court that the appellant has met this burden.

At the motion for new trial, appellant's newly-retained counsel, Mr. Raftery and Ms. Scoggins, introduced the testimony of the security guard at the Castle Club, who unequivocally stated that appellant was not the driver of the vehicle, but instead was the passenger. Counsel Raftery introduced further testimony tending to show that another man was present in the vehicle as it left the parking lot of the Castle Club. Counsel Scoggins sought to introduce into evidence several affidavits which named the other man in the vehicle and which corroborated the fact that this man had suffered numerous injuries in the same automobile accident. Appellate counsel has submitted the affidavit of Jerry Matheson, an accident reconstructionist. Mr. Matheson, a former chief of the Oklahoma Highway Patrol and expert in accident reconstruction for twenty-five (25) years, agreed that appellant could not have been the driver of the vehicle, due to the angle of impact and the position of the appellant in the passenger seat.

The trial exhibits include photographs, taken immediately following the accident, which clearly show that the appellant was pinned on the passenger's side of the GMC. These photographs also reveal that the driver's side door was found open, the steering wheel was bent, and blood was found in the area of the driver's seat, indicating the presence of another individual.

With such extensive evidence supporting the appellant's claim that he was not driving, it is inconceivable that trial counsel, Sullivan and Burch, did not question the identity of the driver. In fact, in opening statement, Mr. Sullivan conceded that the appellant was the driver. The appellant repeatedly asked that this possible defense be investigated and gave trial counsel names of individuals who could give information as to the driver. Trial counsel refused, claiming that he "didn't believe it."

Regardless of trial counsel's belief in the appellant's claim, this avenue of defense should have been thoroughly investigated, especially in light of the overwhelming physical evidence which corroborated the theory. Trial counsel's actions towards the most obvious defense do not even approach "a reasonable facsimile of trial strategy." *Galloway v. State*, 698 P.2d 940, 942 (Okla. Crim.App.1985). When counsel knows of the existence of a person or persons who possess information relevant to his client's defense, and he fails to use due diligence to investigate that evidence, such a lack of industry cannot be justified as "strategic error." *Smith v. State*, 650 P.2d 904, 908 (Okla.Crim.App.1982). The American Bar Association Standards for Criminal Justice, Defense Function 4–4.1, maintain that:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.

This blatant lack of investigation indicates a severe deficiency in the performance of trial counsel.

As to the second prong of the *Strickland* test, prejudice to the appellant due to the inadequate performance of counsel is clear.

*See Strickland v. Washington,* 104 S.Ct. at 2064. Failure to present this absolute defense unquestionably undermines the reliability of the jury's verdict. The photographs, coupled with the testimony as to the identity of the driver, clearly raise a reasonable probability that, but for trial counsel's unprofessional conduct, the trial's result would have been different. *See Aycox v. State,* 702 P.2d 1057, 1058 (Okla. Crim.App.1985).

▮▮▮ For his second assignment of error, the appellant asserts that the admission of the results of the blood alcohol test was error. He contends that no voluntary consent was given, due to his physical and mental state when the officers visited his house. Again, we must agree.

A tape was made of the interrogation during which appellant acquiesced to the use of the test. However, it must be noted that appellant, just released from the hospital, was recovering from severe injuries. He was suffering from a broken jaw, which was wired shut and compound fractures in both legs. The police officer and the detective arrived at appellant's house, finding appellant bedridden due to these injuries. They began their questioning shortly after appellant had been given his pain medication, which was an opium derivative. Throughout the course of the conversation, appellant was confused and disoriented as evidenced by his own statements and those of the police officer, who told appellant to "keep on a waking up."

Voluntariness is the decisive factor when examining the validity of consent and may be determined by consideration of all surrounding circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 2050–51, 36 L.Ed.2d 854 (1973). The burden rests with the State to show that the consent is in fact voluntary and not the result of coercion. *Holbird v. State,* 650 P.2d 66, 68 (Okla.Crim.App.1982). In the present case, the police officer informed the appellant that he must make an immediate decision regarding the blood alcohol test. After much confusion and while the appellant was still incoherent, the appellant gave his "consent."

The appellant must have a "meaningful opportunity" to make a decision regarding his consent. *Holt v. State,* 686 P.2d 290, 292 (Okla.Crim.App.1984). His situation is similar to the circumstances present in *Krahn v. Dept. of Public Safety,* 569 P.2d 982 (Okla.1977). In *Krahn,* the defendant, suffering from a cerebral concussion, refused to consent to a breathalyzer test. The Oklahoma Supreme Court, in upholding the trial court's decision, determined that the defendant was incapable of making a decision regarding the breathalyzer test, due to her semi-conscious state. Because she had no meaningful opportunity to consent to or refuse the test, her actions could not be the basis for the revocation of her driver's license.

Accordingly, the State has not shown that appellant was given a "meaningful opportunity" to revoke his implied consent. *See Holt,* at 292. This Court has specifically recognized that the admission of results of a blood test at trial, in the absence of a knowing consent, requires a reversal and remand for a new trial. *Sartin v. State,* 617 P.2d 219, 222 (Okl.Crim.App.1980).

Because these two assignments of error are determinative, we do not address the appellant's remaining contentions. On the basis of the foregoing, the judgment and sentence is REVERSED and REMANDED for a new trial.

BRETT, P.J., specially concurring.

BUSSEY, J., dissenting.

BRETT, Presiding Judge, specially concurring.

I concur in this decision. It appears from the record before this Court that the prosecution's theory was that insofar as appellant was the only person found in the vehicle after the collision, he must have been the vehicle driver. When one views State's Exhibit No. 3, which depicts appellant's pinned position on the passenger's side of the vehicle with his head stuck through the windshield and his jacket alongside his right arm, it should be obvious that appellant had to be the passenger. Considering that the point of impact was

on the right front of the GMC Jimmy Pickup, there was absolutely no way possible for appellant to have been under the steering wheel.

State's Exhibit No. 19 depicts the door on the driver's side open and the steering wheel bent at both the top and the bottom with blood splattered on the ceiling above the steering wheel, which causes it to become even more obvious that someone else must have been under the steering wheel. Another of the State's exhibits, depicted by a 35 mm slide, shows a second jacket lying between the driver's and the passenger's seat. Unless appellant was in the habit of wearing two jackets, the second jacket seems to further reveal that someone else was with him in the pickup.

Because the evidence was either not viewed with common sense, or the jury was convinced by the prosecution's theory and defense counsel's failure to challenge that theory, the jury was left to conclude that appellant was the driver. It appears elementary, without the conclusions reached by reconstructionist Mr. Matheson, that appellant could not possibly have been the pickup driver.

Insofar as defense counsel challenged the sufficiency of the evidence in his motion for new trial, we are in the position to evaluate that sufficiency. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985). In *Spuehler*, this Court stated the test for sufficiency as follows:

> In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court held that due process requires a reviewing court to determine 'Whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'

As I view the evidence presented to the jury, viewed most favorable to the prosecution, the test ·of *Spuehler* was not met. Therefore, it is my opinion that the evidence was insufficient to sustain this conviction.

The evidence provided at the hearing on the motion for new trial is even more convincing that this appellant should be entitled to at least a new trial. Clearly, part of the evidence met the newly discovered evidence requirements. The Security Guard at the Castle Club was clearly unavailable to testify at the trial, due to his having suffered a stroke. His testimony at the hearing on the motion for new trial reveals that at the time of trial he was in the hospital and was not aware that appellant was being put to trial. His testimony placed two persons in the vehicle, when it left the parking area. Also, as pointed out in the majority opinion, the admission of the blood alcohol test results was inadmissible, by the State's own evidence.

I concur in the reversal of this conviction, but I would go even further and direct that the information should be dismissed. Nonetheless, I will concur with my colleague and remand it for a new trial.