2002 OK CR 1

**Kenneth Earl DALE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2000–681.**

Court of Criminal Appeals of Oklahoma.

Jan. 2, 2002.

William E. Erickson, Sapulpa, OK, Attorney for Defendant at trial.

Glen D. Hickerson, Assistant District Attorney, Okemah, OK, Attorney for the State at trial.

Gloyd McCoy, Oklahoma City, OK, Attorney for Appellant on appeal.

Kellye Bates, Assistant Attorney General, Oklahoma City, OK, Attorney for the State on appeal.

### SUMMARY OPINION

JOHNSON, Vice–Presiding Judge.

¶ 1 Appellant, Kenneth Earl Dale, was tried by jury in Okfuskee County District Court, Case No. CF–1999–118, for Count 1: Unlawful Cultivation of Marijuana (63 O.S.Supp.1999, § 2–509) and Count 2: Use of a Firearm in the Commission of a Felony (21 O.S.Supp.1999, § 1287). The jury found Appellant guilty on both counts and recommended punishment of 55 years imprisonment and a $50,000 fine on Count 1, and eight years imprisonment on Count 2. The trial court sentenced Appellant accordingly on May 15, 2000, and Appellant timely perfected this appeal.

¶ 2 Appellant raises the following propositions of error:

1. Appellant's Fourth Amendment rights were violated when the law enforcement officers came onto his property through a locked gate without a warrant; any evidence seized or statements obtained following this illegal entry should be suppressed as "fruit of the poisonous tree."

2. The use of a firearm during the commission of a felony is not supported by competent evidence.

3. The sentence imposed upon Appellant is excessive; the sentence should be modified and the fine vacated.

¶ 3 After thorough consideration of the propositions, and the entire record before us on appeal, including the original record, transcripts, and briefs of the parties, we find merit to Proposition 1 of Appellant's brief and reverse for the reasons set forth below.

¶ 4 The charges in this case stem from a warrantless entry onto Appellant's rural residential property by Drug Task Force agents. The agents approached Appellant's property after aerial surveillance suggested that marijuana was being cultivated in a patch not far from the residence. Appellant's property was enclosed by a fence, and the gravel driveway to the residence was blocked by a locked gate.

¶ 5 Approximately eight agents entered the property, unannounced, by climbing over the locked gate. At least two of the agents went directly toward the residence itself, where they were met by Appellant. The agents were dressed in military-style fatigues and boots. They were armed with pistols, though at least one agent, and perhaps more, had a semi-automatic rifle. All the while, a police helicopter surveyed the scene, descended to a low altitude as the ground-based agents approached Appellant, and landed nearby after contact was made.

¶ 6 The agents who approached Appellant told him they were aware of marijuana being grown on the property, and Appellant made some sort of affirmative reply. The agents then asked for permission to search, and Appellant complied. At some point during this exchange, Appellant was told that if he did not consent to a search, the agents would seek a search warrant. During the resulting search, the agents found not only the patch of marijuana, but various paraphernalia associated with its cultivation, as well as a firearm in Appellant's home.

¶ 7 In Proposition 1 Appellant claims, as he did below, that his consent to the search of his property was not voluntarily given.[1] We begin by restating the funda-

---

1. Appellant also asserts that he had a reasonable expectation of privacy in the marijuana patch because it was within the curtilage of the home. On appeal, the State maintains that Appellant's consent rendered the search valid, and does not discuss whether the marijuana patch was within the curtilage. We therefore assume, for pur-

poses of this appeal, that the area was within the curtilage. *Herren v. State*, 75 Okl.Cr. 251, 130 P.2d 325, 330 (1942) (issues raised on appeal by the defendant, and supported by legal authority, which are not addressed by the State in its response may be taken as conceded); *see also*

mental rule that searches conducted outside the judicial process, without prior approval by a magistrate, are presumptively unreasonable under both the Fourth Amendment to the United States Constitution, and Article 2, § 30 of the Oklahoma Constitution. The exceptions to this rule are "jealously and carefully drawn," and there must be a showing by those who seek exemption that the exigencies of the situation made immediate action imperative. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (citations omitted); *Castleberry v. State*, 1984 OK CR 30, ¶¶ 6–7, 678 P.2d 720, 723.

■ ¶ 8 We conclude that the agents' entry of Appellant's property, accompanied by neither a warrant, consent, nor some exigent circumstance, by climbing over the locked driveway gate, which was part of a secure perimeter fence, and proceeding between the two residential structures in order to confront Appellant was an unlawful entry onto the curtilage of the home,[2] and as such, violated Appellant's constitutional protection from unreasonable intrusion.

¶ 9 The agents had ample time to seek a search warrant based on their aerial observation of the suspected marijuana the day before, which itself was entirely lawful.[3] The Court finds no reason for a warrantless search. When law enforcement has this much time to obtain a search warrant, one should and must be obtained. The State presented no evidence of any exigent circumstances that would show a warrantless entry was necessary. *See Fite v. State*, 1993 OK CR 58, ¶ 17, 873 P.2d 293, 296–97.

Howard v. State, 1991 OK CR 76, ¶ 2, 815 P.2d 679, 681–82.

2. Police may obviously enter upon areas of residential property which are intended as public access points; they may, for example, walk up a driveway or walkway to the front porch of a typical urban home in order to contact the occupant, because that is what the area is intended for. In this case, however, the driveway which led to Appellant's rural home was blocked by a locked gate, clearly indicating that no uninvited visitors were allowed beyond that point. The agents not only crossed that barrier, but continued to approach until they were situated between

■ ¶ 10 Because the agents' entry was unlawful, any incriminating statements made by Appellant during this encounter (such as his apparent admission that marijuana was growing on the property) were obtained unlawfully. *Wong Sun v. United States*, 371 U.S. 471, 484–86, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963); *Brown v. Illinois*, 422 U.S. 590, 604–05, 95 S.Ct. 2254, 2262–63, 45 L.Ed.2d 416 (1975); *Lowry v. State*, 1986 OK CR 177, ¶¶ 6–7, 729 P.2d 511, 512–13. Furthermore, considering the totality of circumstances, including (1) the unlawful entry itself, (2) the number of agents participating, (3) their manner of dress, (4) the fact that they were armed not only with pistols but also with semi-automatic weaponry, and (5) the presence of the police helicopter immediately overhead during the encounter, we are convinced that Appellant's consent to the search of the premises was not voluntary in the constitutional sense of the term. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973); *Jennings v. State*, 1987 OK CR 219, ¶ 16, 744 P.2d 212, 215. Consequently, the agents' search of the marijuana patch, based on Appellant's involuntary consent, was unlawful, and the fruits thereof must be suppressed.

¶ 11 Our disposition of the case renders Propositions 2 and 3 moot.

### DECISION

The Judgment and Sentence of the district court is **REVERSED WITH INSTRUCTIONS TO DISMISS.**

CHAPEL and STRUBHAR, JJ., concur.

the two residential structures, for the sole purpose of obtaining consent to search. *Cf. State v. Ridgway*, 57 Wash.App. 915, 790 P.2d 1263 (1990) (police entry of curtilage to rural premises was illegal, and evidence obtained from that vantage point should have been suppressed, where driveway was blocked by a closed gate and house was not visible from the roadway).

3. *Florida v. Riley*, 488 U.S. 445, 448–452, 109 S.Ct. 693, 695–97, 102 L.Ed.2d 835 (1989) (police officer's observation of residential greenhouse interior, from the vantage point of a helicopter 400 feet in the air, was not a "search" for which a warrant was required).

LILE, J., specially concurs.

LUMPKIN, P.J., dissents.

LILE, J.: SPECIALLY CONCURS.

¶ 1 I agree that the "consent" to search was not voluntary under the facts in this case, and the results of the search must be suppressed.

LUMPKIN, Presiding Judge: Dissents.

¶ 1 I dissent to the Court's decision to reverse this case and to the Court's disregard of our well established caselaw on search and seizure. This action reflects a desire to legislate public policy rather than adhere to the discipline of applying the doctrine of *stare decisis.* Our jurisprudence has consistently validated the open fields doctrine which does not require consent to enter the property when the doctrine applies. Here, the Court disregards that established law to achieve a desired result.

¶ 2 This Court has always interpreted Article II, Section 30, of the Oklahoma Constitution consistent with the Fourth Amendment of the United States Constitution. In *Sanders v. State,* 287 P.2d 458, 463 (Okl.Cr.1955) this Court stated:

By the provision of Section 30 of Article II of the Constitution of Oklahoma, it is provided that:

'The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.'

This provision is almost identical in language with the Fourth Amendment to the Constitution of the United States.

287 P.2d at 463.

¶ 3 In *Long v. State,* 706 P.2d 915, 916–17 (Okl.Cr.1985) we stated:

We, however, are not favorably disposed toward setting up a different standard of interpretation for Article II, § 30 of the Oklahoma Constitution. Years ago Oklahoma's Court of Criminal Appeals recog-

nized the close relation of the Oklahoma Constitution's Article II, § 30 and the Fourth Amendment to the United States Constitution when it stated in *DeGraff v. State,* 2 Okl.Cr. 519, 103 P. 538 (1909):

This provision of our Constitution [Article II, Section 30] is almost an exact copy of the fourth amendment of the Constitution of the United States. . . .

* * *

* * *

It is true that the language is not in all respects the same in the two provisions; but the substance is identical. For a proper understanding of the question before us, it is important to find out what construction the United States courts have placed upon this provision.

¶ 4 In *Hughes v. State,* 522 P.2d 1331, 1333 (Okl.Cr.1974) we stated:

The provisions of Article 2, § 30 of the Oklahoma Constitution relating to search and seizure, and the Fourth Amendment of the Constitution of the United States, are identical.

*See also Richardson v. State,* 841 P.2d 603, 605 (Okl.Cr.1992) (art. II, § 30 of the Oklahoma Constitution should not be interpreted to require the exclusion, from revocation proceedings, of evidence seized in violation of the Fourth Amendment); *Langham v. State,* 787 P.2d 1279, 1280 (Okl.Cr.1990) (art. II. § 30 interpreted same as the Fourth Amendment for purposes of determining validity of search warrant).

¶ 5 In the present case, a flyover by agents of the Oklahoma Bureau of Narcotics (OBN) revealed an area that was thought to be a marijuana patch on Appellant's land. Agents on the ground were directed to Appellant's land to determine whether the area in fact contained marijuana. The entrance to Appellant's property was a few miles off the main road. A locked cattle gate was at the entrance. OBN agents climbed over the locked gate in order to gain entrance to the property. Two of the agents met Appellant as they walked up the road from the gate. Agents told Appellant they had been advised there was marijuana growing on his property. Appellant admitted the property be-

longed to him and that he had marijuana growing on the property. Agents read Appellant his *Miranda* rights. Appellant waived his rights and signed a rights waiver form. Agents then asked if they could have Appellant's consent to search his premises, curtilage and vehicles. Appellant gave his consent to the search.

¶ 6 Several facts in this case should be well considered. First, there were no "no trespassing" signs erected at the perimeter of Appellant's property. Second, the law enforcement agents conducted no search of the grounds, nor did they discover any condemning evidence prior to gaining Appellant's consent to search. The agents remained on the road leading to Appellant's home in an effort to locate him and gain consent, and it was on this path that they encountered Appellant. However, consent is not required under these facts and should not be used by the Court as a diversion from the real issue, i.e. the application of the open fields doctrine.

¶ 7 It is improper to assume in this case that the area to be searched was within the curtilage of Appellant's home. Absent a showing that an area is closely tied to the intimacy of the home, an area cannot be deemed to be part of its curtilage, and if this area is not curtilage it must be considered within the open fields doctrine. Further, since open fields do not fall into the protections afforded persons, houses, papers, and effects, the Fourth Amendment provides no protection from minor warrantless intrusions on such property. Though a property owner may claim trespass, such cannot be deemed a constitutional violation.

¶ 8 The U.S. Supreme Court has been clear in this area of jurisprudence. As explained in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) and *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), parcels of land such as that in the case at bar cannot fall within the Supreme Court's interpretation of curtilage nor the protections of the Fourth Amendment. In *Oliver*, the Supreme Court relied upon the rule set out in *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924) in which Justice Holmes explained, "[The] special protection

accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." *Oliver*, 466 U.S. at 176, 104 S.Ct. at 1740. This rule "may be understood as providing that an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Id.*, 466 U.S. at 178, 104 S.Ct. at 1741. "The test for legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment ... we find no basis for concluding that a police inspection of open fields accomplishes such an infringement." *Id.*, 466 U.S. at 182–83, 104 S.Ct. at 1743.

¶ 9 It was noted that "open fields" need not be open or fields. *Id.* In fact, the Court went so far as to say the fact that an intrusion is a trespass at common law does not construe governmental intrusion on an open field a "search" in the constitutional sense. *Id* The Court concluded that from the text of the Fourth Amendment and the historical and contemporary understanding of its purposes, an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers. *Id.*, 466 U.S. at 183, 104 S.Ct. at 1744.

¶ 10 In *Dunn*, the Supreme Court dealt more closely with the subject of curtilage. The Court quoted *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886) in stating "we identified the central component of this inquiry (as to whether or not an area constitutes curtilage) as whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *Dunn*, 480 U.S. at 300, 107 S.Ct. at 1139. It concluded that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. *Id.*, 480 U.S. at 301, 107 S.Ct. 1139–40.

¶ 11 The Court found it "especially significant" that the law enforcement officials possessed objective data (aerial photos) that the barn was not being used for intimate activities of the home. It found that, under *Oliver* and *Hester*, there is no Constitutional difference between police observations conducted while in a public place and while standing in the open fields. 480 U.S. at 304, 107 S.Ct. at 1141.

¶ 12 This Court has specifically adopted the open fields doctrine in *Fite v. State*, 873 P.2d 293, 296 (Okl.Cr.1993) (Chapel J., opinion) ("[c]learly, the open fields doctrine permitted the police to cross Fite's property, look in his fields, and then look in the well house to determine whether marijuana was growing inside the building.) *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *Grider v. State*, 743 P.2d 678 (Okl.Cr.1987)."

¶ 13 Looking at *Dale* in light of the above case law, a critical issue is the reasonable expectation of privacy. There is no indication Appellant had a reasonable expectation of privacy merely because his land was fenced and gated. Appellant testified that one time he had cattle on the land, therefore, the fence and the gate could have been there to keep in his cattle. Neither the fence nor the gate was tall, "privacy" type fence or gate. In a rural area, it is not reasonable to presume that merely because land is fenced and gated that there is a reasonable expectation of privacy in that land. The law does find a right of privacy in the home and curtilage, but not the rest of the land.

¶ 14 Further, in *Dale*, the agents jumped the fence in order to find and talk with Appellant. They were not conducting a search at the time they walked up the road from the gate, but were looking for Appellant to ask him whether there was any marijuana on his land. The agents' conduct here is no different from the police knocking on an individual's front door to ask a question. Here, the agents were merely looking to talk with Appellant. To find their conduct illegal would require officers to have a warrant in order to approach a person's home seeking information.

¶ 15 Once on the property, agents encountered Appellant walking towards them and asked him about the presence of marijuana on his property. Appellant acknowledged the presence of the marijuana. Agents read Appellant the *Miranda* warning and asked if they could search the property. Appellant gave his consent. The record shows the consent given by Appellant was voluntary. Even though the obtaining of consent was not required under the open fields doctrine, the officers took that extra step. They should not be penalized for taking extra precautions in conducting the search.

¶ 16 "The test of voluntariness is that it is to be judged from the totality of the circumstances." *Johnson v. State*, 905 P.2d 818, 820 (Okl.Cr.1995); *Lumpkin v. State*, 683 P.2d 985, 987 (Okl.Cr.1984) *quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The State has the burden to prove the consent was freely and voluntarily given. *Id.* Here, only 2 of the agents, Cook and Veazey, made contact with Appellant and asked for permission to search. The other agents remained outside the locked gate. The agents were wearing fatigues and carrying guns. However, the testimony showed wearing fatigues was customary for agents in this type of situation and their guns remained holstered and were never aimed at Appellant. Further, Agent Cook did testify he told Appellant that if he did not give his consent for the search, Cook would try to get a search warrant. However, the actual testimony shows the statement was far less definitive and potentially coercive than Appellant would have us believe. Cook testified "I told him there was no guarantee. I could go up there and may not and may get it [a search warrant], but there was no guarantee." Looking at all the facts and circumstances, Appellant's consent to search was voluntarily given. The evidence shows he unequivocally gave agents permission to search and offered no protest or resistance of any kind. Further, the evidence shows his consent was not the result of coercion or duress. But, most important, consent was not required pursuant to the open fields doctrine.

¶ 17 The case law from this Court and the U.S. Supreme Court clearly support the agents' actions in this case. While the officers could have waited and gone to town to

get a warrant, the fact they did not does not invalidate the ensuing search either pursuant to the consent given or the open fields doctrine. Accordingly, I dissent to the reversal of this case.